**Opinion issued November 5, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-18-00708-CR**

———————————

**PHILIP ANDREW RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1564201**

---

## MEMORANDUM OPINION

A jury found Philip Andrew Rodriguez guilty of the offense of aggravated assault by threat with a deadly weapon.[1] The jury assessed Rodriguez's punishment at two years in prison and a $5,000 fine. It also recommended that the prison

---

[1]     *See* TEX. PENAL CODE §§ 22.01(a)(2); 22.02(a)(2).

sentence be suspended, that Rodriguez be placed on community supervision, and that the fine be probated. The trial court followed the jury's sentencing recommendation, placing Rodriguez on community supervision for two years and probating the fine.

In four issues on appeal, Rodriguez contends that (1) the State made an impermissible comment during closing argument regarding his failure to testify; (2) the trial court abused its discretion when it sustained the State's objections to his closing argument; (3) the evidence was insufficient to support the judgment of conviction; and (4) he received ineffective assistance of counsel.

We affirm.

## Background

On September 17, 2017, Enrique Morales, Carlos Gonzales, and Elsa Cisneros went to a Houston bar to socialize. They left the bar around 2:30 a.m. in Gonzales' Honda Accord. Gonzales was driving, Cisneros was in the front passenger seat, and Morales was in the back seat.

Gonzales turned onto Waugh Drive, a two-lane street that narrows to one lane. Rodriguez was also on Waugh traveling the same direction as Gonzales's Honda Accord. As the road narrowed to one lane, Gonzales sped up and cut in front of Rodriguez's truck. Gonzales and Morales then heard several gunshots coming from behind their Honda. Morales dove to the floorboard of the car and

2

told Gonzales, "They're shooting. Go." At the time, Rodriguez's truck and Gonzales's car were the only vehicles on the road. When Gonzales accelerated to get away, Rodriguez also sped up and began tailgating the Honda.

To determine if Rodriguez was pursuing them, Gonzales turned at several intersections. At each turn, Rodriguez followed. After going around four or five blocks, Gonzales turned onto Westheimer Road with Rodriguez behind him.

When he turned onto Westheimer, Rodriguez's truck fishtailed and his tires squealed. This got the attention of Officers Otero and Price of the Houston Police Department, who were at the Westheimer intersection in their patrol car. The officers initiated a traffic stop of Rodriguez's truck. When they approached him, the officers noted that Rodriguez seemed agitated.

During the stop, Gonzales's Honda pulled up to the police car. Gonzales, Morales, and Cisneros yelled to get the officers' attention. Officer Otero noticed that the occupants of the Honda seemed frightened, and they were pointing at Rodriguez's vehicle. They told the officers that Rodriguez had fired a gun at them.

The traffic stop then switched to an investigation of the reported shooting. The officers asked Rodriguez to get out of his truck, and they placed him in handcuffs. Officer Otero later testified that, to insure the safety of himself and Officer Price, he opened the door of the truck and saw, in plain view, a semiautomatic 9-millimeter pistol on the floor directly behind the driver's seat,

3

which would have been within Rodriguez's reach. The pistol was loaded with ammunition. When they removed the magazine from the pistol, the police discovered that four rounds were missing. The police found two more loaded magazines in the truck. The officers also noticed that the pistol had the distinct odor of having just been fired.

While they were detaining Rodriguez, the officers learned from police dispatch that a 9-1-1 caller had recently reported a "drive by" shooting in the same area. The caller identified a truck matching the description of Rodriguez's truck as being involved in the shooting.

Rodriguez was arrested and later indicted for the offense of aggravated assault. The indictment alleged that Rodriguez had "unlawfully, intentionally and knowingly threaten[ed] Enrique Morales with imminent bodily injury by using and exhibiting a deadly weapon, namely, a firearm."

At trial, the State offered the testimony of (1) Gonzales and Morales, who were in the Honda; (2) Officers Otero and Price; (3) and M. Williams, the person who had been nearby and called 9-1-1 to report the shooting. The State also offered the audio of Williams's 9-1-1 call, the 9-millimeter pistol, and the magazines recovered from Rodriguez's truck. The defense rested without offering any evidence.

4

A jury found Rodriguez guilty of the offense of aggravated assault. Based on the jury's sentencing recommendation, the trial court placed Rodriguez on two-years community supervision and probated the $5,000 fine the jury had assessed.

Rodriguez now appeals. He raises four issues.

## Sufficiency of the Evidence

In his third issue, Rodriguez asserts that the evidence was insufficient to support the judgment of conviction.[2]

### A.      Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the

---

[2]     Rodriguez frames his third issue as a challenge to the factual sufficiency of the evidence. Because Texas courts no longer conduct factual sufficiency analyses in criminal cases, we construe Rodriguez's issue as a challenge to the legal sufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We address the legal-sufficiency issue first because, in the event it is meritorious, we would render a judgment of acquittal rather than reverse and remand. *See Benavidez v. State*, 323 S.W.3d 179, 181 (Tex. Crim. App. 2010).

verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *In re Winship*, 397 U.S. 358, 361 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point

6

directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**B.    Analysis**

To prove Rodriguez guilty of the offense of aggravated assault as charged, the State was required to show, beyond a reasonable doubt, that Rodriguez intentionally or knowingly threatened Enrique Morales with imminent bodily injury by using and exhibiting a deadly weapon, namely, a firearm. *See* TEX. PENAL CODE §§ 22.01(a)(2); 22.02(a)(2). A review of the record shows that the evidence admitted at trial was sufficient to prove each element of the offense.

Gonzales and Morales each testified that when they encountered Rodriguez at 2:30 a.m. there were no other vehicles traveling on Waugh Drive. They testified that, immediately after Gonzales cut over in front of Rodriguez's truck as the road narrowed to one lane, they heard several gunshots coming from behind them. Gonzales sped up to get away, and Rodriguez also sped up, keeping pace with Gonzales's car. Rodriguez's truck followed Gonzales's Honda closely, tailgating it. Gonzales made numerous turns, but Rodriguez continued to closely pursue Gonzales's vehicle until Rodriguez was stopped by police.

M. Williams testified that he was in a nearby grocery store parking lot when he heard several gunshots. He then saw a silver truck driving fast and chasing a

7

sedan. Although he did not see the occupants of the vehicles, Williams testified he assumed that the gunfire was coming from the truck because the truck was pursuing the car at a fast pace.

Williams also testified that he called 9-1-1, and the audio from the 9-1-1 call, made at 2:40 a.m., was admitted into evidence. In the call, Williams reported that he saw a silver truck chasing a car and that he believed someone in the truck was shooting at the car.[3]

Officers Otero and Price testified that they initiated a traffic stop after they saw Rodriguez's silver truck fishtail and heard its tires squeal as it turned the corner onto Westheimer. They stated that Rodriguez was the driver and only person in the truck. The officers testified that Rodriguez was "agitated," and Officer Price described Rodriguez as being "aggressive."

The officers stated that, during the traffic stop, Gonzales's Honda pulled up, and the three occupants yelled to get the officers' attention. They told the officers that they believed Rodriguez had shot at them. Officer Otero testified that the people in the Honda seemed "excited and frightened." Around that time, the

---

[3] Williams reported that the car was a black BMW. Other evidence showed that Gonzales's car was a gold Honda Accord. However, it was for the jury, as fact finder, to resolve any conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

officers also learned from dispatch that a 9-1-1 caller had reported a "drive by" shooting in the area.

The evidence showed that the officers had Rodriguez get out of the truck, and they placed him in handcuffs. Officer Otero testified that he opened the door of Rodriguez's truck, and in plain view, on the floor behind the driver's seat, he saw a semiautomatic 9-millimeter pistol. Officer Price stated that the pistol was "readily accessible" to someone in the driver's seat. Officer Otero confirmed that, as a firearm, the 9-millimeter pistol was a deadly weapon. *See* TEX. PENAL CODE § 1.07(a)(17)(A) (defining "deadly weapon" to include "a firearm").

The officers also testified that the pistol was loaded with ammunition. Upon checking, they discovered that four rounds were missing from the magazine in the pistol. They also found two more fully loaded magazines in Rodriguez's truck.

Finally, the officers' testified that the pistol had the distinct smell of having just been fired. Officer Price testified that, through his training, he had fired "thousands of rounds." He said that, in his experience, the distinct smell associated with discharging a firearm dissipates within minutes of its being fired.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt each element necessary to support the finding that Rodriguez committed the offense of aggravated assault as charged in the indictment. *See Jackson*, 443 U.S. at 318–19;

*Williams*, 235 S.W.3d at 750. Accordingly, we hold that the evidence was sufficient to support the judgment of conviction.

We overrule Rodriguez's third issue.

## Complaint About State's Jury Argument Not Preserved

In his first issue, Rodriguez complains that the following remarks by the State during closing argument amounted to an improper comment on his failure to testify: "[Rodriguez] has no explanation for why the gun is out. He has no explanation for why there are rounds missing. He doesn't jump up and down like Officer Otero told you and say, 'Hey, someone was shooting. I heard shooting. They were aggressively following me.'"

Although he complains on appeal about this portion of the State's argument, Rodriguez made no objection during closing argument to these remarks.

When a defendant fails to object to jury argument, he forfeits his right to raise the issue on appeal. *Hernandez v. State*, 538 S.W.3d 619, 622–23 (Tex. Crim. App. 2018); *see Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004) ("At the outset, the court of appeals erred in even considering appellant's argument that the prosecutor's comment [during closing argument] amounted to a comment on appellant's failure to testify, since appellant made no such argument in the trial court."). Because he failed to object to the prosecutor's argument at trial, Rodriguez has waived his right to raise the issue on appeal.

We overrule Rodriguez's first issue.[4]

## State's Objections to Rodriguez's Closing Argument

In his second issue, Rodriguez asserts that the trial court abused its discretion when it sustained the State's objections to two statements made by defense counsel during closing argument.

### A. Standard of Review

We review the trial court's ruling on an objection to closing argument for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); *Cantu v. State*, 395 S.W.3d 202, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). To constitute an abuse of discretion, the trial court's ruling must fall outside the zone of reasonable disagreement. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

Generally, to be permissible, jury argument must fall within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to opposing counsel's argument; or (4) a plea for

---

[4] Toward the end of the discussion of this issue, Rodriguez avers, "In the event trial counsel did not object[,] he was ineffective in his failure to do so. . . . The State improperly commented on the Defendant; [sic] silence and if trial counsel failed to object, he was ineffective." To the extent that Rodriguez intends to make an ineffective-assistance-of-counsel-argument within his complaint about the State's jury argument, Rodriguez offers no substantive argument or citation to legal authority. Any ineffective-assistance-of-counsel argument related to this issue is waived by inadequate briefing. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

11

law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). The trial court does not abuse its discretion by sustaining an objection to an argument that is not supported by the evidence. *See Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980).

**B.    Analysis**

Rodriguez directs us to a portion of his closing argument in which defense counsel alluded to testimony by Officers Otero and Price relating to whether the officers performed gunshot-residue testing on Rodriguez. Specifically, Rodriguez points us to the following two instances in which the trial court sustained the State's objections to defense counsel's remarks regarding gunshot residue:

> [Defense Counsel]: You should expect more and better from the State and from the police. This case could be open and shut if there was gunshot residue. They say it wasn't available as a kit. Well, at some point it is available at a station, in a police station, anywhere like that. Gunshot residue is often taken. It's residue that comes from—
>
> [Prosecutor]: Objection. Facts not in evidence.
>
> [Trial Court]: Sustained.
>
> Please stay within the record, Counsel.
>
> [Defense Counsel]: It's residue that comes from a gun and lands on the hands. There is a test for it. It's infallible. It was—
>
> [Prosecutor]: Objection. Facts not in evidence.
>
> [Trial Court]: Sustained.

Rodriguez asserts that the trial court abused its discretion in sustaining the State's two objections. He claims that, in both instances, defense counsel's objected-to statements were reasonable deductions from the evidence.

The State first mentioned gunshot-residue testing on direct examination of Officer Otero. The State asked, "We sometimes hear about testing for gun residue or anything like that. Is that something that you—is that something that you have the capability of doing out there in the field?" Officer Otero responded, "No," explaining that patrol officers, such as he and Officer Price, are not provided with gunshot-residue test kits to use either in the field or at the police station. Officer Price gave similar testimony, explaining that as patrolmen they do not test for gunshot residue either in the field or at the station. He said that would be an "investigator's responsibility."

The defense also asked Officer Price to describe what gunshot residue is. Officer Price stated, "[T]he residue is what would actually be left on a person's hands if they were to shoot a firearm." He distinguished it from "the actual burned powder, that's what creates the smell when the cartridge is fired and ejected."

Returning to the defense's closing argument, the trial court sustained the State's objections to defense counsel remarks that "at some point [gunshot-residue testing] is available at a station, in a police station, anywhere like that. Gunshot

residue is often taken." The trial court also sustained the State's objection to defense counsel's remark that gunshot-residue testing is "infallible."

We recognize that an attorney may make reasonable deductions from the evidence so long as the argument is supported by the evidence and offered in good faith. *Andujo v. State*, 755 S.W.2d 138, 144 (Tex. Crim. App. 1988). Here, as discussed, the testimony of Officers Otero and Price showed that gunshot-residue testing was not something that they, as patrol officers, perform either in the field or at the police station. Officer Price also stated, without elaboration, that the testing was the responsibility of "investigators," and he provided a general description of gunshot residue. From this evidence, it was not reasonable for defense counsel to deduce how often "gunshot residue is taken," whether "it is available at a [police] station," or that gunshot-residue testing is "infallible." Thus, the trial court properly exercised its discretion in sustaining the State's objections.

We overrule Rodriguez's second issue.

### Ineffective Assistance of Counsel

In his fourth issue, Rodriguez asserts that he was not provided effective assistance of counsel because his trial attorney did not advise him of his right to testify at trial. He claims that, as a result, he did not knowingly waive his right to testify.

14

## A.    Applicable Legal Principles

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Rodriguez has the burden to establish both prongs of the test for ineffective assistance of counsel by a preponderance of the evidence. *See Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

## B.    Analysis

Here, Rodriguez contends that his counsel failed to inform him of his right to testify at trial, thereby depriving him of his right to testify in his own defense.

The record shows that Rodriguez filed a motion for new trial. In the motion, Rodriguez indicated that he did not knowingly waive his right to testify at trial because his defense counsel did not inform him of that right. And he claimed that, had he been informed of that right, he "would have told his version of the events and thereby secured a not guilty verdict." However, the motion was not verified or sworn, and no affidavits or other evidence was offered to support it. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Lamb v. State*, 680 S.W.2d 11, 13 (Tex. Crim. App. 1984) ("Motions for new trial are not self-proving. They must be supported by affidavits and the affidavits must be offered into evidence.").

Rodriguez correctly points out that a defendant has the right to testify at his own trial.[5] *Rock v. Arkansas*, 483 U.S. 44, 51–52 (1987); *Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009). And, he correctly points out that "defense counsel shoulders the primary responsibility to inform the defendant of his right to testify, including the fact that the ultimate decision belongs to the defendant." *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005).

When reviewing a claim that counsel deprived a defendant of his right to testify on his own behalf, the two-part *Strickland* test applies. *See Johnson v. State*,

---

[5]     A defendant may, however, knowingly and voluntarily waive this right to testify. *See Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009) (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).

169 S.W.3d 223, 239 (Tex. Crim. App. 2005). A claim of ineffective assistance must be firmly supported in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A silent record that provides no explanation for trial counsel's actions will not overcome the presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Further, "a claim that trial counsel deprived the defendant of his right to testify must be supported by evidence in the record that the defendant would have testified, and of what the defendant would have said." *Dukes v. State*, 486 S.W.3d 170, 182 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

Here, Rodriguez has failed to satisfy either prong of the *Strickland* test. Regarding the first prong, other than Rodriguez's unsupported assertions in his motion for new trial, nothing in the record indicates that counsel failed to inform Rodriguez of his right to testify or that Rodriguez wanted to testify but was denied the opportunity to do so. *See id.* In short, the record does not show that counsel's performance fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 813–14.

Regarding *Strickland*'s second prong, the record does not contain the substance of the testimony that Rodriguez claims he would have given had his counsel informed him of his right to testify. Thus, it is not possible to determine whether there was a reasonable probability that the result of the proceeding would

17

have been different if Rodriguez had testified. *See Carballo v. State*, 303 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that, because appellant "did not file a motion for new trial, and the record does not contain the substance of the testimony that appellant claims he would have given on redirect questioning by his defense counsel," it was "not possible to determine whether the result of the punishment proceeding would have been different if defense counsel had questioned appellant regarding his version of the events").

We conclude that Rodriguez has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness or that the result of the trial would have been different had he testified; therefore, he has not satisfied either *Strickland* prong. We hold that Rodriguez has not shown, by a preponderance of the evidence, that he received ineffective assistance of counsel at trial. *See Strickland*, 466 U.S. at 687–88, 694.

We overrule Rodriguez's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).