

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00028-CR
_____

**JEREMY DAVID SPIELBAUER, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 26,626-C; Honorable Ana Estevez, Presiding

January 22, 2020

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Jeremy David Spielbauer, was charged with capital murder in the death of his former wife, Robin Spielbauer. A jury convicted him of the lesser-included offense of murder, sentenced him to confinement for life, and assessed a $10,000 fine. He presents two issues challenging his conviction. First, he maintains the trial court abused its discretion by denying challenges for cause to venire members Terry Freethy and

Joseph Havlik. By his second issue, he asserts he was denied effective assistance of counsel when, during the course of the investigation, his former attorneys allowed him to submit to interviews with investigators under the auspices of a use immunity agreement without any understanding of the evidence possessed by the investigators. Finding issue one dispositive of this appeal, we reverse and remand for a new trial.

### BACKGROUND

Robin Spielbauer's death and Appellant's subsequent conviction are the result of a love triangle gone wrong. Appellant and Robin were married in 2005. Years later, they befriended Katie Phipps and, eventually, she and Appellant began having an affair. In 2012, Robin divorced Appellant and a year later, he married Katie. In early 2014, Katie began to suspect that Appellant and Robin were having an affair. Needless to say, Robin and Katie's relationship was acrimonious, and, at times, their relationship boiled-over into physical altercations.

On April 8, 2014, Robin's body was discovered by passers-by, lying motionless near her Tahoe, on a dirt road in west Randall County. Law enforcement officers were called, and an investigation ensued. Although not immediately apparent at the scene, an autopsy showed that Robin had suffered blunt force trauma and had been shot in the back of the head. The investigation revealed that pink plastic pieces found at the scene and pink smears transferred onto the window of the Tahoe matched a pink gun owned by Katie. In fact, forensics confirmed that Katie's pink gun was the murder weapon. Given Robin and Katie's volatile relationship, authorities suspected Katie of the murder and began to build a case against her. She was soon arrested and charged with Robin's murder.

Shortly after Robin's murder, while Katie was a suspect, but before Appellant became a suspect, he retained the assistance of two attorneys for the purpose of entering into a *Use Immunity Agreement* with the Randall County District Attorney's Office, in connection with the case being built against Katie. The agreement provided that if Appellant gave "truthful, accurate, and complete information about the death of Robin Spielbauer, that said information [would] not be used against [him] in any prosecution." The agreement further provided that if Appellant did not provide information that was "truthful, accurate, and complete," the agreement would be void and his promised immunity would be forfeited. Based on that *Use Immunity Agreement*, Appellant agreed to speak with the prosecutors in Katie's case.

At the same time, police investigators continued to gather information. Based on that continued investigation, more than a year after Katie was arrested and confined in jail, she was ruled out as a suspect in Robin's murder by experts in cell phone forensics. Based on her cell phone records, investigators determined that Katie could not have been at the crime scene at the time of the murder. As a result, the investigation began anew. This time, Appellant became the suspect when experts were able to place his cell phone near the scene of the murder at a time consistent with the time of Robin's death. In addition, investigators located an image of Appellant's vehicle, captured on a bank's security camera, at a location near the scene of the murder and close to the time of death. This evidence contradicted statements Appellant had previously made in that it showed he had the opportunity to commit the murder and return home, despite the fact that he had previously claimed he had never left his home on the night of the murder.

3

Based on the new investigation, authorities theorized Appellant killed Robin with Katie's pink gun in an effort to frame her. In support of their new theory, the investigators obtained numerous text messages suggesting that Appellant and Robin had planned to meet on the night of the murder at the location where her body was discovered. When the investigators confronted Appellant concerning their discoveries, his stories and timelines varied from his earlier statements. Based on this new investigation, the State presented the matter to a Randall County Grand Jury. The grand jury returned a true bill and issued an indictment for the offense of capital murder (based on an allegation that the murder was committed in the course of committing the offense of robbery) and Appellant was arrested on April 16, 2016.

The trial began on January 15, 2018. On that date, the venire members were assembled by numerical order, sworn and qualified by the trial court. They were then given a four-page written questionnaire to complete, containing thirty-two questions (plus additional area for a written explanation of certain answers).[1] The jury questionnaire began with a section captioned "<u>AWARENESS OF CASE</u>" that consisted of a brief summary agreed to by both parties. It provided as follows:

> It is alleged that on on [sic] April 7, 2014, Robin Spielbauer, 32, was shot to death by her ex-husband, Jeremy Spielbauer. Robin Spielbauer was found the next day lying next to an SUV on the west side of Helium Road, just south of West County Road 34.

The questionnaire continued with the following two questions relevant to this appeal:

---

[1] In addition, they were given a one-page "standard" questionnaire to complete that included basic information concerning their sex, age, citizenship, education, residence, occupation, marital status, spouse's name and occupation, and prior jury service.

1.  Do you think you have heard about this case?  [ ] Yes     [ ] No

If yes, please give details (including how you heard – radio, TV, newspaper, internet/social media, word of mouth).

_____

_____

_____

2.  If you have heard about this case, based upon what you have heard, have you formed an opinion as to the guilt or innocence of Jeremy Spielbauer as would influence you in finding a verdict.

[ ] Yes     [ ] No

Following completion of the written questionnaire, the venire members were released, subject to being recalled the next day for *voir dire* questioning.  The completed questionnaires were duplicated and provided to the State and the defense for review prior to individual questioning.  The jury panel was shuffled, and individual jurors were assigned new pool position numbers.

The next morning, before any venire members were individually questioned, defense counsel announced to the trial court that he believed "several members of the panel" had answered "yes" in response to question number two on the jury questionnaire concerning whether they had formed an opinion as to the guilt or innocence of the accused as would influence their verdict.  Based on this affirmative response, defense counsel stated that he believed they were "automatically disqualifie[d]" from serving.[2]  The State's prosecutor responded that he was not opposed to excusing any venire member

---

[2] Article 35.16(a)(10) of the Texas Code of Criminal Procedure provides that no further "interrogation by either party or the court" is permitted when a venire member *affirmatively* states that he has formed a conclusion about an accused's guilt or innocence "as would influence the juror in finding a verdict."  TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(10) (West 2006) (emphasis added).

"who actually [held] that position," he was "just not sure" one could tell that from a simple "yes or no" answer. The State's prosecutor complained that the written answers were so brief that a "yes" answer was "not that simple" and he proceeded to further cajole the trial court into allowing additional interrogation of the venire members who had answered question number two "yes."

When the trial court asked both counsel if they wanted the "three or four" venire members who had answered "yes" to question number two to be brought in for questioning before any of the other venire members were examined, the State's prosecutor responded, "That is fine with me, Your Honor." When pressed for an answer to that same question, defense counsel replied, "I believe it is very clear that if a person answers that question in the *affirmative*, no further questioning is to be had and they are there [sic] to be discharged. It is not a subjective question."

Notwithstanding defense counsel's objection, the trial court requested the clerk to summon six venire members: (1) number four—Terry Freethy, (2) number ten—Virginia Perry, (3) number thirty-one, Joseph Havlik, (4) number forty, Branston Adams, (5) number forty-three, Hanna Brinson, and (6) number sixty-five—Carla King—all based on their affirmative answers to question number two.

The first venire member to be questioned by the court was Virginia Perry. Perry responded that she was personally acquainted with the deceased and had, indeed, formed an opinion as to the guilt or innocence of the accused. Neither the State nor the defense questioned the venire member. At that point, the State's prosecutor agreed to defense counsel's challenge for cause as to Perry and she was excused.

The next venire member to appear was Terry Freethy. On his questionnaire Freethy had marked the "Yes" box on question one and offered the following details: "I watch news every day. I did hear something about this case. Don't remember too much." He also marked the "Yes" box on question two. Appearing before the court, Freethy was subjected to the following interrogation:

COURT: Mr. Farren, I will let you ask him two questions.

PROSECUTOR: Mr. Terry (sic), question number 2 is asking - -

Question number 1 says; Do you know anything about this case? You said: "I watch the news every day. I did hear something about this case, but I don't remember too much." Is that accurate?

FREETHY: Yes.

PROSECUTOR: Question number 2 said: "If you have heard about the case, based upon what you have heard, have you formed an opinion as to the guilt or innocence of Jeremy Spielbauer as would influence you in finding a verdict?"

You checked "Yes." Did you intend to check "Yes?"

FREETHY: Well, you know, my wife watches all these murder mysteries. I don't know what blends in with what. I don't know.

PROSECUTOR: Let me ask you this: Do you believe you would be able to sit in the trial, listen to all the evidence and make a decision based on - -

DEFENSE: Judge, I am sorry. I think we have got to have an answer to that first question. Because if he hasn't answered that and on his questionnaire he answered "Yes," then that disqualifies him. So until he answers that question, there is no further questioning to be had.

COURT: Okay, go ahead and answer the question.

7

PROSECUTOR: Did you intend to check "Yes," and what did you mean - -

FREETHY: Ask me the question again. I don't remember.

PROSECUTOR: Okay. "If you have heard about this case, based on what you have heard, have you formed an opinion as to the guilt or innocence of Jeremy Spielbauer as would influence you in finding a verdict?"

Did you intend to say "Yes, I have already made up my mind?"

DEFENSE: Judge, that is not what the statute says. He is adding things to that question to try to coach the jury to answer something different. And we would ask - -

PROSECUTOR: How is that different than "Yes?"

COURT: Okay, can you answer the question that has been asked?

FREETHY: Well, I would say "No" at this point.

COURT: Why at this point?

FREETHY: I don't know anything about the case.

COURT: Why did you answer "yes" yesterday?

FREETHY: (Shrugs.) I couldn't give you an answer to that.

COURT: Have you formed an opinion regarding the guilt or innocence of - -

FREETHY: I don't know anything about it.

COURT: Mr. Spielbauer? I am sorry?

FREETHY: I don't know anything about it.

COURT: Okay, that wasn't my question. Whether or not you know anything about it, have you formed an opinion on whether or not Mr. Spielbauer is guilty or not guilty?

FREETHY: No.

8

| | |
|---|---|
| COURT: | Thank you.  Do you have any questions for him, Mr. Wilson? |
| DEFENSE: | I will just ask you again, sir - - You obviously - - You read the question and answered it yesterday.  I would ask you again why you answered it "Yes" and you are answering it "No" today? |
| FREETHY: | I made a mistake. |

At that point, defense counsel renewed his article 35.16(a)(10) objection as to Freethy; however, the trial court did not provide him a ruling.

The next venire member to appear was Joseph Havlik.  On his questionnaire, Havlik had marked the "Yes" box on question one and offered the following details: "Heard through word of mouth/social media."  He also marked the "Yes" box on question two. After a short colloquy between the trial court and the venire member, Havlik answered, "No" when asked if he had already "formed an opinion on whether [Appellant was] guilty or not guilty."  No further questions were permitted to be asked by the State's prosecutor or defense counsel and Havlik was excused from the courtroom.  At that point, defense counsel renewed his article 35.16(a)(10) objection as to both Freethy and Havlik and this time his objections were overruled.

The next venire member to appear was Branston Adams.  This time the trial court confirmed that the he had indicated on his questionnaire that he had formed an opinion as to the guilt or innocence of the accused as would influence his verdict.  Having confirmed that fact for the record, the trial court asked him one question, "Have you already decided - - Have you formed an opinion as to the guilt or innocence of Mr. Spielbauer?"  Mr. Adams answered, "Yes."  Defense counsel then sought to confirm that

9

Adams's opinion would influence his verdict, to which the trial court responded, "Yes." The State's prosecutor followed up with one question, "Is your opinion that he is guilty or innocent?" Adams responded by saying his opinion was that [Appellant] was guilty. Defense counsel's challenge for cause was sustained without objection from the prosecution.

The next venire member to appear before the court was Hanna Brinson. Similar to the exchange with venire member Adams, the trial court confirmed the fact that Ms. Brinson had answered question number two on the questionnaire in the affirmative. Once that answer was reaffirmed with a "yes" response, without further questioning, the trial court turned to counsel and asked, "Do I have a motion?" The State again sought to solicit whether Ms. Brinson was of the opinion that Appellant was "guilty" or "innocent," to which she replied, "Uh, probably guilty." Again, defense counsel's challenge for cause was sustained without objection from the prosecution.

The last venire member to specially appear before the court was Carla King. Just as the court had done in its exchanges with venire members Havlik, Adams, and Brinson, without asking any follow-up questions, the trial court confirmed that King had answered the second question in the questionnaire in the affirmative. Defense counsel raised his challenge for cause and, just like he had done with venire members Adams and Brinson, the State's prosecutor asked the question, "Is your opinion that the Defendant is guilty or innocent?" Following King's response of, "Guilty" the State's prosecutor stated that he had "no objection" to defense counsel's challenge for cause. With that, the trial court sustained that challenge and venire member King was discharged.

10

At that point, general *voir dire* commenced. At the conclusion of venire member questioning, the trial court reaffirmed the challenges for cause or by agreement that had been sustained.[3] The trial court then asked if there were any further motions, to which defense counsel urged the trial court to reconsider her previous denial of his challenges for cause regarding venire members Freethy and Havlik. The trial court overruled that request. At that point, defense counsel asked the trial court to "grant us an additional two peremptory challenges for those overruled objections." That request was denied.

The parties were then asked to exercise their peremptory challenges. Both sides completed their strike lists and submitted them to the trial court clerk. The record shows that defense counsel was forced to use two peremptory challenges to strike Freethy and Havlik from the venire panel and that he had exhausted his remaining eight peremptory challeges. The clerk then announced the names of the fourteen members of the venire panel (twelve jurors and two alternates). Before the venire members were seated and sworn as jurors, the trial court asked if there were any objections. The State's prosecutor announced, "No." Defense counsel asked to approach the bench where he reminded the trial court that without the two additional peremptory challenges he had requested, the defense was "forced to accept two jurors who are not acceptable to us because we did not have additional peremptory challenges. That would be Karla Stoffle and Valerie Cooper." The trial court responded, "All right." At that point, the venire panel was excused and the jury, including jurors Stoffle and Cooper, were seated and sworn.

---

[3] During the course of *voir dire,* venire members number 1, 10, 13, 21, 39, 40, 42, 43, 48, and 58 were excused for cause or released by agreement.

Appellant's trial proceeded with the jury, including the two objectionable jurors, deciding his fate. He was eventually convicted of the lesser-included offense of murder and the jury assessed his sentence at life imprisonment and a $10,000 fine.

### ISSUE ONE—DENIAL OF CHALLENGES FOR CAUSE AS TO FREETHY AND HAVLIK

By his first issue, Appellant contends the trial court abused its discretion in denying his challenges for cause as to Freethy and Havlik. We agree.

### APPLICABLE LAW

A prospective juror may be challenged for cause by making an objection as to that juror, alleging some fact which renders the juror incapable or unfit to serve on that particular jury. TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (West 2006).[4] Article 35.16(a) further provides that "[a] challenge for cause may be made by either the state or the defense for any one of the following reasons":

> (10) [t]hat from hearsay or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence the juror in finding a verdict. To ascertain whether this cause of challenge exists, the juror shall first be asked whether, in the juror's opinion, the conclusion so established will influence the juror's verdict. *If the juror answers in the affirmative*, *the juror shall be discharged without further interrogation by either party or the court*. If the juror answers in the negative, the juror shall be further examined as to how the juror's conclusion was formed, and the extent to which it will affect the juror's action . . . .

*Id.* at art. 35.16(a)(10) (emphasis added). As can be seen from the clear text of this statute, an affirmative answer to the question of whether a venire member has formed an opinion that would *influence* his or her verdict mandates that the venire member be

---

[4] Except as otherwise expressly provided, future references to "article" or "art." are references to the Texas Code of Criminal Procedure.

discharged "without further interrogation by either party or the court." *Id.*[5] Failure to discharge a venire member subject to a proper challenge for cause results in error as a matter of law. *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001) ("Denial of a proper challenge for cause is error because the makeup of the jury affects its decision.").

A peremptory challenge, on the other hand, is a challenge made to a member of the jury panel without assigning any reason. TEX. CODE CRIM. PROC. ANN. art. 35.14 (West 2006). A peremptory challenge may be made for any reason, or for no reason at all. In a non-capital felony case or in a capital case in which the State does not seek the death penalty, such as here, the State and the defendant are each entitled to ten peremptory challenges. *Id.* at art. 35.15(b). After *voir dire* is completed, the parties desiring to challenge a juror peremptorily shall strike the name of such juror from the list furnished by the clerk. *Id.* at art. 35.25. Each party's list is then delivered to the clerk who shall then call off the first twelve names not stricken. *Id.* at art. 35.26(a).

If the trial court errs in overruling a challenge for cause against a venire member, the appellant must show that he was harmed because he was forced to use a peremptory challenge to remove that venire member and that he suffered a detriment from the loss of that peremptory challenge. *See Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016) (citing *Chambers v. State*, 866 S.W.2d 9, 22 (Tex. Crim. App. 1993)).

Accordingly, preservation of error regarding a complaint about the denial of a challenge for cause requires a defendant to (1) make his challenges for cause, (2) use

---

[5] The remainder of article 35.16(a)(10) applies only when a venire member gives a negative answer, which then requires further examination on whether the venire member is able to render an impartial verdict. Only then is the trial court's discretion at play to determine if the venire member is competent to serve as a juror.

his peremptory strikes on the complained-of venire members, (3) exhaust all his peremptory strikes, (4) request and be denied additional peremptory strikes, and (5) identify the objectionable jurors who sat on the jury. *Buntion*, 482 S.W.3d at 83; *Johnson*, 43 S.W.3d at 7. In such instances, error is preserved for review only if an appellant (1) used all of his peremptory challenges, (2) asked for and was refused additional peremptory challenges, and (3) was then forced to take an identified, objectionable venire member whom the appellant would not otherwise have accepted had the trial court granted his challenge for cause (or granted him an additional peremptory challenge so that he might strike that venire member). *Buntion*, 482 S.W.3d at 83.

To establish harm for an erroneous denial of a challenge for cause, an appellant must show on the record that he used a peremptory challenge to remove the venire member challenged (and erroneously not removed) and thereafter suffered a detriment from the loss of a peremptory challenge. *Id.*; *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex. Crim. App. 2014) ("When the trial judge denies a valid challenge for cause, forcing the defendant to use a peremptory strike on a panel member who should have been removed, the defendant is harmed if he would have used that peremptory strike on another objectionable juror.").

### ANALYSIS

In this case, the record shows that prior to the petit jury being seated and sworn, Appellant (1) requested two additional peremptory challenges for the peremptory challenges he was forced to use on Freethy and Havlik, (2) was denied any additional peremptory challenges, (3) used one of his peremptory challenges on venire member Freethy, (4) used one of his peremptory challenges on venire member Havlik, (5)

14

exhausted his remaining eight peremptory challenges, and (6) was forced to accept two venire members (Stoffle and Cooper) to sit on the jury whom he would have otherwise struck had he been given the two additional peremptory challenges he requested.

Because the State initially challenges Appellant's preservation of error, we must address its argument that Appellant procedurally defaulted his complaint regarding the denial of challenges for cause to venire members Freethy and Havlik. Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). However, it is "not an inflexible concept" and preservation of error rules should not be mechanically applied. *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013). "The standards of procedural default are not to be implemented by splitting hairs in the appellate courts." *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (holding that "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it")). As such, it is also imperative that a defendant make the trial court aware of the complaint at a time and in a manner when it can be corrected. *See Loredo v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004).

In its brief, the State tacitly acknowledges that Appellant satisfied the *Buntion* procedure for preservation of error but contests the timing of his identification of the objectionable jurors "until *after* [their] names had been called out and each such juror was

seated for service."[6]   The State contends that under article 35.26(a)[7] Appellant was required to take the following steps:

> advise the trial court that he was exercising his peremptory strikes on [venire members] Freethy and Havlik, that he had exhausted the remainder of his peremptory strikes, that he was requesting two additional peremptory challenges and that he was being compelled to accept two specifically-identified, objectionable venirepersons because he had been forced to use those strikes on Freethy and Havlik.

Specifically, the State argues that, in order to preserve error, Appellant was required to identify whom he would strike using the additional peremptory challenges (the "objectionable jurors") *before* he used his statutory peremptory challenges, in order to provide the trial court with the opportunity to remedy its prior erroneous rulings.  The State bolsters its argument by relying on this court's opinion in *McBean v. State*, 167 S.W.3d 334, 337-38 (Tex. App.—Amarillo 2004, pet. ref'd), which purports to apply *Johnson*.  In *McBean*, this court held that defense counsel did not follow the appropriate steps outlined in *Johnson* to preserve his complaint on the denial of a challenge for cause *where he did not request any additional peremptory challenges until after* both parties had exercised their respective statutory peremptory challenges.  *Id.* at 337.

Appellant's response to the State's argument distinguishes the facts in *McBean* from the facts in this case, which the State otherwise categorizes as "similar," when they

---

[6] We note that cases in this area are notoriously vague about the actual sequence of events.  While it might be an appropriate euphemism to say that the jurors were "seated for service" (a condition that they had been in since the first day of trial—even before the commencement of *voir dire*), it is not appropriate to assume they had been "seated for service" as sworn petit jurors.  In fact, in this case, they had merely been identified, but not sworn.

[7] Article 35.26(a) provides in part that "[w]hen the parties have made or declined to make their peremptory challenges, they shall deliver their lists to the clerk."  The statute continues that the clerk shall "call off the first twelve names on the lists that have not been stricken."  TEX. CODE CRIM. PROC. ANN. art. 35.26(a) (West 2006).

are not. In *McBean*, no request for additional peremptory challenges was made until *after* *voir dire* was completed and both the State and the defense had exercised their statutory challenges; whereas, here, defense counsel made numerous requests for additional peremptory challenges, which requests were repeatedly denied, both during and after *voir dire*. We further distinguish *McBean* in its analysis of preservation of error concerning the trial court's ability to correct any error through the granting of an additional peremptory challenge.

In the underlying case, the venire members selected had not been sworn and empaneled as the petit jury and the venire pool had not been released. As such, additional jurors were there and available and the trial court could have easily avoided reversible error by simply granting the two additional peremptory challenges requested. Furthermore, requiring a defendant to identify whom he would strike through the use of an additional peremptory challenge, prior to the exercise of his statutory peremptory challenges, would put that defendant at a disadvantage to the State by requiring that he "tip his hand" as to which venire members he might find objectionable.

In *McBean,* the defendant sought to challenge for cause an assistant district attorney who was employed by the entity prosecuting the case. *Id.* at 335. In making his challenge, defense counsel alerted the trial court that there were numerous venire members he already intended to strike and that *if* he struck the assistant district attorney, he would have to ask for an additional peremptory challenge. *Id.* Following *voir dire* and the submission of the strike lists to the clerk, the trial court announced the members of the jury. Not until then did defense counsel state that "one of [the defendant's] peremptory challenges had been exercised to strike [the assistant district attorney] and the remainder

17

of [the defendant's] challenges had been used." Defense counsel then identified the seventh juror as objectionable. *Id.* at 336. In finding that error was not preserved, this court held that defense counsel in *McBean* did not timely "(1) advise the trial court that he had actually used a peremptory challenge to strike [the assistant district attorney] and had used all his other peremptory challenges, (2) request an additional peremptory challenge, and (3) identify a specific objectionable juror that he would strike if given an additional peremptory challenge." *Id.* at 339.

In *Johnson*, the trial court erroneously denied challenges for cause to two venire members who stated they could not consider the minimum punishment. *Johnson*, 43 S.W.3d at 2. The sequence of events in *Johnson* was as follows: (1) the defendant made his challenges for cause; (2) the trial court denied the challenges; (3) the defendant used peremptory challenges to strike two venire members; (4) the trial court refused the defendant's request for two additional peremptory challenges; and (5) before the petit jury was seated and sworn, the defendant named two objectionable venire members who sat on the jury. *Id.* Under that set of facts, the Texas Court of Criminal Appeals held that the appellant in *Johnson* had preserved error concerning the trial court's denial of a valid challenge for cause. Given a careful analysis of the facts, *Buntion,*[8] *Johnson*, and their progeny should not be read as requiring that a defendant identify an objectionable juror *prior* to the exercise of his statutory peremptory challenges. To the extent *McBean* can be read as mandating a rule of law to the contrary, we disavow that interpretation.

---

[8] It should be noted that *Buntion* was a capital murder trial where the State was seeking the death penalty. As such, the *voir dire* procedure and the procedure for exercising peremptory challenges was entirely different.

Here, the sequence of events was as follows: (1) defense counsel made his challenges for cause to Freethy and Havlik, which challenges were erroneously denied; (2) defense counsel moved for reconsideration of the trial court's prior rulings on challenges to Freethy and Havlik, which request was denied (3) defense counsel requested two additional peremptory challenges, which request was denied, (4) the parties exercised their peremptory strikes and submitted the lists to the clerk; (5) the clerk called the names of the first fourteen venire members who were not peremptorily challenged; (6) defense counsel again reminded the trial court that his request for additional peremptory challenges had been denied and announced that Appellant was now "forced to accept two jurors who are not acceptable . . . because we did not have additional peremptory challenges" and "[t]hat would be Karla Stoffle and Valerie Cooper"; and (7) the trial court excused the remainder of the panel and the twelve jurors and two alternates were seated and sworn.

In the underlying case, defense counsel was not attempting to exercise peremptory challenges against Stoffle and Cooper after the clerk had called the names of the venire members who would sit on the jury. He was merely advising the trial court of the names of the "objectionable jurors" Appellant was forced to accept by virtue of the fact that he was required to use two of his peremptory challenges to strike jurors whom the trial court should have excused for cause. Given the dialog between the trial court and defense counsel, the trial court was well aware of the objection being lodged at a time and in a manner when it could have been corrected. As such, we find defense counsel took every step necessary to preserve Appellant's complaint for appellate review. *See Dukes v. State*, 486 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (finding that

error was preserved on the denial of a challenge for cause because defense counsel had complied with the requirements of *Johnson*). *See also Tillman v. State*, No. 14-98-01233-CR, 2001 Tex. App. LEXIS 3359, at \*7 (Tex. App.—Houston [14th Dist.] May 24, 2001, pet. ref'd) (mem. op., not designated for publication) (rejecting the State's argument that error was not preserved because defense counsel requested and was denied ten additional peremptory strikes after the clerk called the names of the jurors but before they were sworn). Any other conclusion would result in a hair-splitting, hyper-technical application of the rules of preservation—a result not intended by the Texas Court of Criminal Appeals. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston*, 827 S.W.2d at 909).

Having found that Appellant preserved his complaint regarding the trial court's denial of his challenges for cause, we next consider whether the trial court's denial of those challenges harmed him. "Harm for the erroneous denial of a challenge for cause is determined by the standard in Rule of Appellate Procedure 44.2(b)." *Johnson*, 43 S.W.3d at 2. Under that standard, an appellate court should disregard an error unless a "substantial right" has been affected. *See* TEX. R. APP. P. 44.2(b) (providing that "any other [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"). The Texas Court of Criminal Appeals has said that substantial rights are affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson*, 43 S.W.3d at 4. Under this standard, if one cannot say, with fair assurance, "that the judgment was not substantially swayed by the error, it is *impossible* to conclude that substantial rights were not affected." *Id.*

20

(emphasis added). "If one is left in grave doubt [as to whether the error did *not* affect substantial rights], the conviction cannot stand." *Id.*

"Since 1944, harm has been demonstrated, and the error held reversible, when the appellant (1) exercised his peremptory challenges on the venire member whom the trial court erroneously failed to excuse for cause, (2) exhausted his peremptory challenges, (3) was denied a request for additional peremptory challenges, and (4) identified an objectionable juror who sat on the case." *Id.* at 5-6 (citing *Wolfe v. State*, 147 Tex. Crim. 62, 178 S.W.2d 274, 279-80 (1944)). The application of "Rule 44.2(b) does not change the way that harm is demonstrated for the erroneous denial of a challenge for cause." *See Johnson*, 43 S.W.3d at 2. *See also Comeaux*, 445 S.W.3d at 750 ("When the trial judge denies a valid challenge for cause, forcing the defendant to use a peremptory strike on a panel member who should have been removed, the defendant is harmed if he would have used that peremptory strike on another objectionable juror.").

As discussed earlier herein, the record establishes that defense counsel was forced to use two peremptory challenges on Freethy and Havlik, depriving Appellant of two of his ten statutorily allotted peremptory challenges. The record also shows that defense counsel requested and was denied two additional peremptory challenges which he would have used to strike venire members Stoffle and Cooper, who eventually sat on the jury that convicted Appellant. Without those two additional peremptory challenges, Appellant suffered a detriment. *See Johnson*, 43 S.W.3d at 6 ("It is the privilege of an accused to exclude from service one whom, in his judgment is unacceptable to him.").

Therefore, we hold that under the facts of this case, Appellant was harmed by the trial court's error. Issue one is sustained. Our disposition pretermits consideration of Appellant's second issue. *See* TEX. R. APP. P. 47.1.

**CONCLUSION**

Having sustained Appellant's first issue, the trial court's judgment is reversed and the cause is remanded to the trial court for further proceedings.



Patrick A. Pirtle
Justice