Opinion issued February 11, 2020



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00456-CR

———————————

**KENNETH RAY BATTEN, SR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 17-CR-1668

## MEMORANDUM OPINION

A jury convicted Kenneth Batten, Sr., of burglary of a habitation and sentenced him to 20 years in prison. In his first issue, Batten contends that insufficient evidence supported his conviction because there was no direct evidence he entered the house. In his second issue, Batten contends that the trial court erred

in overruling his motion to exclude the testimony of two child witnesses because it was extraneous to his charge and its probative value was substantially outweighed by its prejudicial effect. Agreeing that the trial court erred in admitting the children's testimony, we reverse and remand for a new trial.

## Background

In May 2017, Deputy J. Olvera stopped and questioned Kenneth Ray Batten, Sr. in the Chase Park neighborhood of Bacliff, Texas, after a young girl complained that a man had asked her to get into his car and provided Deputy Olvera with a license plate number. As Deputy Olvera was talking to Batten, she noticed wires in a black trash bag in the back seat of Batten's car and tool bags, tools, and gloves in the front seat of his car. The deputy observed that "the wires looked to be cut" and found that suspicious. She also found a single key in Batten's pocket that was not on his key chain.

The deputy took photos of the car. Some of these photos show tool bags, miscellaneous tools, and gloves in the front seat area of Batten's car. Another photo shows the back seat with bags of wires. Other photos show that Batten had more tools in the back seat and in the trunk, including wire-cutters.

Deputy Olvera arrested Batten for driving with a suspended license. Batten was eventually charged with attempted kidnapping of the child and burglary of a building. The police investigated the single key. The day after Batten's arrest,

2

Deputy Olvera checked on the houses in the neighborhood and saw a sign, either for rent or for sale, in the yard of a home. The officer then found that the lockbox on the house was broken and was missing a key. The house is five blocks from the location in which Batten was stopped and arrested.

Deputy Olvera testified that she successfully used the key she recovered from Batten's pocket to enter the house. Inside, she saw insulation from the attic on the floor, right under the attic door. She also noticed that the breaker box was turned off. The deputy could not say when the lockbox was compromised. She also could not say whether the wires found in Batten's car came from the house on Chase Point. After her initial inspection of the house, Deputy Olvera did not discover any evidence of a theft.

The owner of the house, R. Jacobs, testified that the house was for rent and that it had been about a month since someone last lived there. After the last renters left, Jacobs inspected the property to make sure everything was in order. Jacobs testified that he maintained the property by checking it weekly and by mowing the lawn. Jacobs also testified that he gave various contractors access to the key in the lockbox but that they always returned the key. He noted that when work was done on the house in the past, he had been notified. He was not expecting there to be any work done on the house on the day of Batten's arrest. Jacobs testified that he did not

know Batten and has never given someone with that name authority to enter his rental house.

Jacobs testified that, before the police investigated the house, he saw nothing wrong with his property. Yet after the police left, he noticed damage. He tried to turn on the water and it did not work. He tried to turn on the lights, and those did not work either. He called an electrician who said that all the wires had been cut.

Detective Remmert testified that vacant buildings are frequently burglarized for their fixtures and wiring. Wires are stripped, and the copper is sold for scrap metal. Detective Remmert did not find it surprising that Jacobs did not notice missing wiring upon inspection of the house with the police at first. According to Detective Remmert, a layperson would not see the missing wires when walking through the house.

Batten denied breaking the lockbox and denied breaking into Jacobs's house. Detective Remmert testified that, when asked about possessing a key to the house, Batten stated, "Y'all might can get me as far as attempted to break into something, but I didn't break into that house to take any wiring."

Before voir dire, the trial court severed the burglary of a habitation case from the attempted kidnapping case. Batten then moved to exclude the testimony of two children who would describe the attempted kidnapping offense. Batten argued that their testimony was extraneous to the burglary of a habitation charge and the

4

probative value of their testimony was substantially outweighed by its prejudicial effect. In response, the State argued that the two offenses were so interconnected that it was impossible to give the jury an accurate timeline of events without the attempted kidnapping. The State further argued that it needed to address the kidnapping claim to explain to the jury how Deputy Olvera located Batten (i.e., by Batten's license plate in the same neighborhood) and why she stopped to question him (i.e., to investigate the alleged attempted kidnapping of the young girl). The trial court overruled Batten's objection and ordered the State to instruct witnesses to refrain from using the term "kidnapping" to minimize the prejudicial effect of the testimony.

The State's theory was that Batten took the key from Jacobs's lockbox and used it to enter the house and steal the wiring later found in his back seat during the traffic stop. The State began its case by eliciting testimony from the two young girls and the mother of one of the girls that Batten had tried to kidnap. The jury convicted Batten of burglary of a habitation. The trial court admitted evidence of Batten's prior convictions that enhanced the punishment range to 2 to 20 years. The jury sentenced Batten to the maximum punishment of 20 years' confinement.

Batten appealed.

## Legal Sufficiency

Batten contends the evidence does not support his conviction for burglary of a habitation. He argues no one saw him entering or leaving the house. There also was no forensic evidence connecting him to the house. Further, Jacobs did not discover his rental house was missing wiring until weeks after Batten's arrest.

### A.    Standard of review

We review challenges to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010). Under *Jackson*, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that the state proved each element of the charged offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19; *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence in making our determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The State need not disprove every conceivable alternative to guilt. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 2007).

Evidence is insufficient under four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere

"modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 & n.11.; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The *Jackson* standard defers to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts." *Jackson*, 443 U.S. at 318–19; *Clayton*, 235 S.W.3d at 778. Circumstantial evidence alone can be enough to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2012). An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution if the resolution is rational. *See Jackson*, 443 U.S. at 326. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter a judgment of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

## B. The evidence was legally sufficient

While there is no direct evidence that Batten entered Jacobs's house to commit burglary, a conviction may rest on circumstantial evidence alone. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). A jury may infer an act from the "acts, words, and conduct of the accused." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999).

The offense of burglary occurs when a person does not have the consent of the owner of the property, yet "enters a habitation, or a building not then open to the public, with intent to commit a felony; or . . . enters a building or habitation and commits or attempts to commit a felony." TEX. PENAL CODE § 30.02(b)(1), (3). Direct evidence of entry is not required, as the offense can be established by inference. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006).

Jacobs had a lockbox on the front door with a key in it, and only specific people, such as contractors, had the code. Jacobs checked the house in the weeks before Batten's arrest and did not notice anything wrong with the house. But when the police checked the house, they found that someone had pried open the lockbox and the key was missing. Batten had a key in his pocket that fit the lock on the house. The officer's in-car video of Batten's arrest was admitted into evidence. In the video, the officer realized that Batten was wet. Batten responded that he had been "winterizing"[1] a house in a hot attic in the month of May. The officer asked Batten where he had been, and Batten described the residence and the intersection where

---

[1] Winterization is the preparation of household plumbing for freezing temperatures to "ensure the safety of the utilities during the winter climate." *See Mortgage Contracting Services, LLC v. J & S Prop. Services LLC*, No. 8:17-CV-1566-T-36CPT, 2018 WL 3219386, at *1 (M.D. Fla. July 2, 2018); *see also Winterize*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/winterizing (last visited Feb. 3, 2020). The process involves, among other things, emptying the water heater and draining the water from the pipes. *See, e.g.*, *Kautsman v. Carrington Mortgage Services*, LLC, No. C16-1940-JCC, 2018 WL 513588, at *1 (W.D. Wash. Jan. 23, 2018).

8

the house was near, which differed from Jacobs's house. Batten had wires in his car, and there were wires missing from the house that the key in Batten's pocket opened. From this information, the jury could have reasonably inferred that Batten had used the key to enter the house and steal the wiring. The jury could have disbelieved Batten's explanation that he had been in an attic "winterizing" the house, because it was May in Texas, and winter was many months away. Based on evidence that the house had a broken lockbox, a missing key, and insulation beneath the attic door, the jury could have reasonably inferred that it was Batten who used the key in his pocket, entered the house, and rummaged through the attic. The jury could have further concluded that Batten entered the house without permission to remove the wires based on Jacobs's testimony that he never gave Batten permission to enter the home. Finally, the jury was entitled to rely on Batten's incriminating statement that he could have been guilty of attempting to "break into something." This statement supports the other evidence and permitted the jury to infer that Batten entered the house.

In sum, the circumstances allowed a reasonable jury to conclude that Batten broke open the lockbox, stole the key, and then entered the house and the attic, where he removed the wiring that was found in the back seat of his car. There is legally sufficient evidence to support the jury's verdict.

We overrule Batten's first issue.

**Same Transaction Contextual Evidence**

Batten contends that the trial court erred by admitting testimony from two young girls indicating that Batten had tried to kidnap one of them. Batten contends that the word "kidnapping" and the entire line of questioning were prejudicial and biased the jury. Batten further contends that the State could discuss the burglary of a habitation charge without evidence of attempted kidnapping.

In response, the State argues that the two offenses were interconnected. It also argues that the kidnapping testimony would help the jury to make sense of the record, especially how the police came to apprehend Batten. The State also argues that admitting this testimony was essential because the children offered substantive evidence of the burglary by placing Batten and his car in the neighborhood at the time of the burglary.

**A.    Standard of review**

We review a trial court's admission of extraneous offense evidence for an abuse of discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996); *Wolfberg v. State*, 73 S.W.3d 441, 443 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A trial court does not abuse its discretion if its decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex. Crim. App. 1991). This Court will sustain a trial court's decision on admissibility of evidence if correct on any theory of law applicable to the case,

even when the trial court's underlying reason for the decision is wrong. *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990) (*citing Spann v. State*, 448 S.W.2d 128 (Tex. Crim. App. 1969)).

**B.     The trial court's decision to admit the kidnapping testimony was error**

Under Rule 404(b), evidence of extraneous crimes is not admissible at the guilt/innocence phase of trial to prove that a defendant committed the charged offense in conformity with a bad character trait. TEX. R. EVID. 404(b). But such evidence may be admitted if it constitutes "same transaction contextual evidence." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If two offenses are interwoven such that they form an "indivisible criminal transaction," so the State cannot introduce one without revealing the other, the offenses are same transaction contextual evidence. *See Dukes v. State*, 486 S.W.3d 170, 181 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)). Same transaction contextual evidence "exists only where that evidence *is necessary* to the jury's understanding" of the offense. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (emphasis in original). To be admissible, same transaction contextual evidence must also satisfy Rule 403's balancing test:

> (1) How compellingly the extraneous offense serves to make a fact of consequence more or less probable – a factor that is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

11

(2) The potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) The time the proponent will need to develop the evidence during which the jury will be distracted from consideration of the indicted offense; and

(4) The force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*See Reese v. State*, 33 S.W.3d 238, 240–41 (Tex. Crim. App. 2000) (explaining the application of Rule 403).

Under Rule 403, the trial court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest that a decision be made on an improper basis." *Reese*, 33 S.W.3d at 240. Unfair prejudice may result from the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant. *Casey v. State,* 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). Evidence is not admissible to show "same transaction context" when its primary or sole purpose is to prove that the defendant acted in conformity with a "bad character trait." *Babers v. State*, No. 01-15-00409-CR, 2016 WL 4203657, at *3 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (mem. op., not designated for publication).

This case is analogous to *Babers*, in which the defendant was charged with sexual assault. The trial court admitted the defendant's extensive pornography

collection as well as testimony about the collection and that a witness saw him masturbating hours after the alleged assault. *Id*. In reversing and remanding, this Court found that the evidence was "inherently prejudicial" and "force[d] [the defendant] to defend himself against charges not a part of the present case against him." *Id.* (citing *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008)).

Similarly, the Court of Criminal Appeals has held that evidence of a defendant's use, possession, or sale of marijuana was not necessary for the jury to understand the charged offenses of burglary and possession of methamphetamine. *Rogers*, 853 S.W.2d at 33.

The trial court here abused its discretion when it admitted the children's testimony about the alleged attempted kidnapping. The officer testified that the house was about five blocks from where a child, T.F., had contact with Batten. T.F., who was 10 years old, was walking to her friend S.'s house when she encountered a man later identified as Batten. T.F. testified that she saw a man in a car who told her to get inside. He opened his door and got out. T.F. then screamed, yelled for help, and went to her friend's house. According to T.F., Batten told her, "You have to come out sometime." T.F. called her mother at work and told her that a "man tried to kidnap me." T.F.'s mother then called the police. T.F. did not witness any burglary that day, however.

The police arrived and as the officer was talking to the children, one of the girls identified Batten's car. The officer saw Batten driving past the driveway, with the license plate number matching the description of the car.

The State contends that this testimony explains how Batten came to the officer's attention, which led to him being apprehended and charged for burglary. The State further contends that the testimony placed Batten in the neighborhood at the time of the burglary. The children's testimony also provided the jury with a description of Batten's car and his license plate, which gave police justification to detain him. The State argues that omitting this testimony would leave the case incomplete.

Yet, none of the kidnapping testimony was necessary to the jury's understanding of the burglary. *See Rogers*, 853 S.W.2d at 33 (concluding that in "narrating appellant's arrest it would not have been impracticable to avoid describing the recovery of marijuana and appellant's confessed use and sale of marijuana"). The jury could understand the case without the emotionally freighted attempted kidnapping description. None of the witnesses who testified identified Batten as the man who tried to kidnap T.F. The reason for the traffic stop is not a fact of consequence. The jury only needed to know that Batten was located, detained, and arrested in the same neighborhood as the burglarized house. That information was available from the deputy and from Batten's own admissions. The information

14

Deputy Olvera provided, that Batten had "cut" wires in his vehicle and was wet from, according to him, working in an attic, and he had a key in his pocket that opened the door to the house that had been burglarized, was also relevant. The reason for Batten's detention did not aid the jury's understanding of the burglary. *See Babers*, 2016 WL 4203657, at *3.

Instead, the attempted kidnapping had the potential to impress the jury "in some irrational but nevertheless indelible way." TEX. R. EVID. 403; *Reese*, 33 S.W.3d at 240–41. The threat of violence toward a child had the potential to push the jury to convict Batten for burglary, not on the strength of the burglary evidence, but on the visceral impact of the attempted kidnapping testimony. For these reasons, we hold that the trial court abused its discretion by admitting the testimony of the two child witnesses.

## C.    The admission of the testimony was harmful

We review the erroneous admission of extraneous offense or extraneous bad act evidence for non-constitutional error under Texas Rule of Appellate Procedure 44.2(b). Tex. R. App. P. 44.2(b); *Rodriguez v. State*, 546 S.W.3d 843, 860 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Under Rule 44.2(b), we disregard the error unless it affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.

Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). But an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Ultimately, the court must examine whether the evidence, even if relevant, had significant potential "to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States,* 519 U.S. 172, 180 (1997).

Extraneous offense evidence is "inherently prejudicial." *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008). Evidence of an attempt to kidnap a child off the street, with live testimony from the child and her friend, necessarily had an emotional impact on the jury. The impact was not isolated. The first thing the State argued in its opening was that a 10-year-old girl would be testifying that Batten drove up to her as she was walking down her street and told her to "get in the car." The State praised the girl for being smart and running away. The State told the jury that they would see the video of the deputy as she was interviewing the girl and her friend as Batten's vehicle passed by. T.F. and her friend were the first two witnesses the jury heard from at trial. The third witness was the mother who called the police. Three of the six witnesses during the guilt-innocence portion of the trial testified about the attempted kidnapping rather than the burglary of the habitation. None knew anything about the burglary. The State mentioned T.F. as the first topic in their

16

closing argument during guilt-innocence. The State returned to T.F. during their closing argument in punishment, calling the episode "scary" and "shocking":

> But now that we are in punishment, you actually can consider all of the facts. So, let's talk about T.F., because that is bizarre. That is strange. It leaves a great, big question mark about what he was going to do. So, is there a victim or not? That's for you to decide. What was going to happen with that 10-year-old girl? We have no idea. But that's something that's also scary and it's shocking, just as shocking as someone who would go into a house and strip all the wiring out of it.

The next thing the State asked was for the jury to assess the maximum punishment. The jury complied.

The evidence tying Batten to the burglary was not overwhelming. The evidence did not reveal when the lockbox was compromised or when the burglary occurred. No one saw Batten enter or leave the house. The theft was not discovered until well after Batten was arrested for driving with a suspended license. Jacobs replaced the electrical wiring before the police inspected the home. No witnesses matched the wires in Batten's car to those in the house. Batten told the police he was a self-employed electrician.

We note that the jury considered Batten's prior criminal history in assessing punishment. But we must also note that the jury chose the maximum sentence allowed on this burglary charge involving $4,000 in property damage to an empty rental house after receiving lengthy testimony of a possible child kidnapping. Indeed, the jury's punishment underlines that the admission of the extraneous

17

offense testimony is a grave concern. We therefore hold that the admission of the children's testimony affected Batten's substantial rights.

We sustain Batten's second issue.

## Conclusion

Because there was sufficient evidence to convict Batten of burglary of a habitation, we overrule his first issue. Because the trial court abused its discretion in admitting the evidence of the suspected kidnapping and that error was harmful, we sustain Batten's second issue and reverse the trial court's judgment and remand for a new trial. Given the resolution of the second issue, we need not reach Batten's third issue.

Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Goodman, and Landau

Do not publish. TEX. R. APP. P. 47.2(b).