**Opinion issued March 3, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00938-CR

————————————

**XAVIER SHROD DUKES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1407998**

---

## OPINION ON REHEARING

A jury convicted Xavier Shrod Dukes of murder and assessed his punishment at 60 years' imprisonment. On appeal, he contends that (1) the trial court erred in denying his challenge for cause against a venire member; (2) the evidence is legally insufficient to convict him; (3) the trial court erred in excluding

evidence of an alternative perpetrator; and (4) his counsel rendered ineffective assistance. After a panel of our court issued its opinion in this case, Dukes moved for rehearing and rehearing en banc. We withdraw the opinion and judgment dated December 29, 2015 and issue this opinion and judgment in its stead. The motions for rehearing and rehearing en banc are denied. Finding no error, we affirm.

## BACKGROUND

Late one night, Dukes waited in his car in an apartment complex parking lot for the mother of his child, Chaddricka Jackson, to return to her apartment. Dukes planned to bring Jackson and their son to stay with him at a nearby motel room. Dukes and Jackson had been fighting, and Jackson did not want to go with Dukes. Through his open car door, Dukes accused Jackson of cheating on him with a neighbor, John Bates-Williams. Bates-Williams, who was sitting on an electrical utility box nearby, intervened, telling Dukes that he was a friend of Jackson's family and that there was no romantic relationship between them. Bates-Williams placed himself between Dukes and Jackson and told Jackson to go back to her apartment. Jackson walked back to her apartment and Dukes got back in his car, backing out of his parking space as if to leave. While Dukes was backing out his car and driving toward the exit gate, Bates-Williams followed alongside on foot, as the two exchanged words in a heated argument. Per one witness's testimony, Bates-Williams challenged Dukes to "go ahead." Dukes parked his car in the path

of the apartment gate so that it couldn't close. He got out of his car and told Bates-Williams, "you think I'm playing with you." Dukes then drew a semiautomatic pistol and fired seven shots in the direction of Bates-Williams. A witness to the shooting estimated that Dukes fired from five feet away, but the crime scene investigator estimated that Dukes was about fifteen feet away, based on the location of the spent shell casings. One shot grazed Bates-Williams, and another struck him in the chest. Dukes fled the scene. Bates-Williams was pronounced dead upon the arrival of Houston Fire Department personnel.

At trial, the State relied on the testimony of Chasity Williams, a neighbor, unrelated to Bates-Williams. She testified that she witnessed the shooting from her nearby window. The State corroborated her testimony with footage from a nearby security camera, which did not capture the shooting but captured events immediately before and after it. Chaddricka Jackson testified for the State about the personal circumstances between Dukes and her and the moments before the shooting.

Dukes presented no evidence. At trial, he contended that the State's evidence failed to show that he intended to kill Bates-Williams, but that, given that only two of the seven shots hit Bates-Williams, Dukes fired the shots as a warning, intending to miss, and hit Bates-Williams accidentally.

**DISCUSSION**

## I. Challenge for Cause

On appeal, Dukes first contends that the trial court erred in denying his challenge for cause to venire member 12, a cardiologist named J. Diez. When Dukes' counsel asked the panel if any of them would be unable to give the trial his undivided attention, Diez responded:

> DIEZ: In response to your question using your words "undivided attention" I do take every time you're talking but I need to get my medicines so I can take care of people so undivided attention quite possible it will happen sir. [sic]

> COUNSEL: Juror No. 12 basically if I understand you you're saying that your life is such that there are things going on constantly that distract you?

> DIEZ: My life is taking care of other's [sic] so I have to plan for whose going to do this or that.

> COUNSEL: So do you feel that because your life is that way that it would interfere with your ability to be a fair juror because you would be distracted and you might miss something?

> DIEZ: In regard to your question regarding undivided attention I'm disclosing.

> COUNSEL: Okay. Thank you.

4

Defense counsel challenged Diez for cause, claiming that Diez could not be fair because his work duties would be a distraction. The trial court denied the challenge.

To preserve an objection to the denial of a challenge for cause, counsel must (1) exercise a peremptory challenge on the objectionable venire member, (2) exhaust all peremptory challenges, (3) request, and be denied, additional peremptory challenges, and (4) identify another objectionable juror who sat on the case because counsel used all his peremptory challenges. *Johnson v. State*, 43 S.W.3d 1, 5–6 (Tex. Crim. App. 2001). When the jury was empaneled, defense counsel objected to the empanelment of several jurors on whom he claimed he would have used peremptory challenges had his challenges for cause been granted or had he received the additional strikes that he had requested. Because counsel complied with *Johnson*'s requirements, he properly preserved error. *Id.*

Article 35.16 of the Code of Criminal Procedure lists a number of reasons for which counsel may challenge a venire member for cause. TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006). It does not include as a possible reason that the venireperson may be distracted by personal matters; thus, Diez's responses do not provide a statutory basis for granting a challenge for cause. *See id.* The trial court may, however, in its sound discretion grant challenges for cause for reasons not enumerated in article 35.16. *See Maldonado v. State*, 998 S.W.2d 239, 248

n.14 (Tex. Crim. App. 1999) ("[C]hallenges not based upon a ground specifically enumerated in Article 35.16 are addressed to the sound discretion of the trial judge."). A trial judge's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). We afford particular deference to the trial judge's ruling on a challenge for cause when a venire member's answers are vacillating, unclear, or contradictory. *Id.*

Because it observed the venire member's demeanor, the trial court was in the best position to interpret the venire member's remarks. *Id.* In this instance, the venire member responded that he had responsibilities to attend to and that he would have to plan for, but he did not clearly state that these responsibilities would prevent him from paying attention to the trial. The trial court, therefore, acted within its discretion in concluding that this venire member, had he been selected to serve, would have followed the trial court's instructions and fulfilled his duties as a juror. Therefore, we hold that the trial court did not abuse its discretion in denying Dukes' challenge.

**II. Legal Sufficiency**

Dukes contends that the evidence is not legally sufficient to support his conviction for murder. Specifically, he argues that the evidence does not prove that he intended to shoot Bates-Williams.

*Standard of Review*

Under the standard of review for legal sufficiency challenges, the evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The factfinder must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789). For review, we determine whether necessary inferences are reasonable in light of the combined and cumulative force of all the evidence, viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We also defer to the factfinder's evaluation of the credibility and weight of the evidence. *Williams*, 235 S.W.3d at 750. The standard of review is the same for

circumstantial and direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

*Analysis*

Murder is a "result-of-conduct" crime, which the Penal Code defines in terms of the result of the perpetrator's actions. *See Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011) (observing that "result of conduct" offenses concern the product of certain conduct). A person commits murder by (1) intentionally or knowingly causing the death of an individual or (2) with intent to cause serious bodily injury, committing an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2011). A person acts intentionally with respect to his conduct when it is his objective to cause the prohibited result, and a person acts knowingly with respect to his conduct when he is aware that his conduct is reasonably likely to cause the prohibited result. *Id.* at § 6.03(a), (b) (West 2011); *Nadal v. State*, 348 S.W.3d 304, 310 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). A person's culpable mental state may be shown by circumstantial evidence. *Bounds v. State*, 355 S.W.3d 252, 255 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Intent to kill may be inferred from the use of a deadly weapon. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Godsey v. State*, 719 S.W.2d 578, 580–

8

81 (Tex. Crim. App. 1986). Under the Penal Code, firearms are deadly weapons per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West 2011 & Supp. 2015); *Vaughn v. State*, 888 S.W.2d 62, 68 (Tex. App.—Houston [1st Dist.] 1994), *aff'd*, 931 S.W.2d 564 (Tex. Crim. App. 1996). The factfinder may draw reasonable inferences from the basic facts. *Murray*, 457 S.W.3d at 448.

Dukes does not contend that the record lacks sufficient evidence to show that he shot Bates-Williams. Rather, he contends, as he did at trial, that there is no evidence that he intended to shoot Bates-Williams. Dukes reasons that because he shot Bates-Williams from only a few feet away and five of the seven shots he fired missed Bates-Williams, the evidence shows that he intended to miss Bates-Williams and only shot him by accident.

Based on the conflicting evidence at trial, however, the jury reasonably could have rejected the claim of an accidental shooting. Though Jackson's testimony places the distance between Dukes and Bates-Williams at a closer range, the crime scene investigator estimated that the spent shell casings from the shooting were fifteen feet away or farther from Bates-Williams. Moreover, Dukes fired seven times and hit Bates-Williams twice. This evidence is not conclusively indicative of an accidental shooting, and it also is evidence from which a jury reasonably could infer that Dukes kept shooting until he hit his target. *See Murray*, 457 S.W.3d at 448 (noting that the factfinder may draw reasonable inferences from

9

the basic facts).  We defer to the jury's evaluation of this evidence.  *See Williams*, 235 S.W.3d at 750.

The circumstances surrounding the shooting provide additional support for the jury's conclusion that Dukes intended to shoot Bates-Williams.  Before Dukes got out of his car, Bates-Williams challenged Dukes to "go [a]head."  The record is silent as to what Bates-Williams challenged Dukes to do.  Dukes got out of his car, leveled the gun at Bates-Williams, told Bates-Williams ". . . you think I'm playing with you," and began firing.  Dukes' denial that he was "playing" with Bates-Williams supports a reasonable inference that Dukes intended to shoot Williams.  Dukes prepared for an escape by parking his car in the path of the gate with its lights turned off, and he fled the scene immediately after the shooting.  From this evidence, the jury could infer that Dukes had planned and followed through with an intent to kill Bates-Williams.  *See id.*

Accordingly, we hold that the evidence was legally sufficient to support the jury's guilty verdict.  TEX. PENAL CODE ANN. §§ 1.07(a)(17)(A), 19.02(b)(1), (2); *Cavazos*, 382 S.W.3d at 384; *Bounds*, 355 S.W.3d at 255; *King*, 29 S.W.3d at 565.

**III. Alternative Perpetrator**

Dukes complains that the trial court erred by not allowing him to present evidence of an alternative perpetrator.  At trial, Dukes attempted to introduce evidence that Bates-Williams was a drug dealer and that there were other people

who wanted to harm him. In support of his theory, he offered to prove that two men had come to Bates-Williams's apartment and threatened him with a gun a week before the shooting. Dukes also mentions Jackson's testimony that shortly after the shooting, three men pulled up in a car, got out, looked at Bates-Williams, and then left the scene. According to Dukes, these events suggest that someone else killed Bates-Williams.

A defendant can attempt to prove his innocence by showing that someone else committed the crime. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002). However, to present evidence of an alternative perpetrator, the defendant must show that the evidence is sufficient to establish a nexus between the crime charged and the alleged alternative perpetrator, either on its own or in combination with the other evidence in the record. *Id.* The admission of alternative perpetrator evidence is also subject to the Rule 403 balancing test, according to which the trial court must weigh its probative value against its tendency to confuse the issues or mislead the jury, among other potential harms. TEX. R. EVID. 403; *Wiley*, 74 S.W.3d at 405–06. Because alternative perpetrator evidence presents "a great threat of 'confusion of the issues,'" it must be viewed with caution. *See Wiley*, 74 S.W.3d at 407. We examine a trial court's exclusion of alternative perpetrator evidence for abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Caldwell v. State*, 356 S.W.3d 42, 48 (Tex. App.—Texarkana

2011, no pet.). A trial court does not abuse its discretion in excluding evidence of an alternative perpetrator if its ruling was within the "zone of reasonable disagreement." *Martin*, 173 S.W.3d at 467.

While Dukes produced some evidence at trial suggesting that others wanted to harm Bates-Williams, he was unable to link this evidence to Bates-Williams's murder. To be entitled to present this evidence, Dukes had to demonstrate a nexus between his proffered evidence and the killing. *Wiley*, 74 S.W.3d at 406. He suggests that the excluded testimony that two men had threatened Bates-Williams with a gun a week before he was killed would have proven a nexus. He presented no evidence, however, that would link that incident to the killing.

Nor did any of Dukes' other evidence entitle him to present an alternative perpetrator theory. Williams testified that after the shooting, three men got out of another car to "check out" the scene. Dukes, however, does not link this car or its occupants to the shooting. "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." *Id.* at 407 (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)). Because Dukes has not shown a nexus between his evidence of an alternative perpetrator and the

crime charged, the trial court did not abuse its discretion in excluding it.  TEX. R. EVID. 403; *Wiley*, 74 S.W.3d at 405.

### IV. Ineffective Assistance of Counsel

Dukes next contends that his trial counsel failed to provide effective assistance by (1) failing to request a sudden passion instruction; (2) failing to request a limiting instruction; (3) erroneously advising him of the impact of testifying during punishment; and (4) failing to object to the State's improper jury argument.

*Standard of Review*

*Strickland v. Washington* sets the standard of review for claims of ineffective assistance of counsel.  466 U.S. 668, 687–96, 104 S. Ct. 2052, 2064–69 (1984); *accord Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  To prevail, Dukes must first show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Bone*, 77 S.W.3d at 833.  Specifically, Dukes "must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms." *Bone*, 77 S.W.3d at 833.  Second, Dukes "must show that this deficient performance prejudiced his defense," meaning that he "must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* (quoting *Mitchell v. State*, 68 S.W.3d

640, 642 (Tex. Crim. App. 2002)). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064. In assessing counsel's performance, we consider the entire representation, indulging a strong presumption that the attorney's performance falls within the wide range of reasonable professional assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Furthermore, a claim of ineffective assistance must be firmly supported in the record. *Id.*

*Analysis*

**1. Sudden Passion Instruction**

Dukes contends that his counsel was ineffective because counsel did not request a jury instruction regarding sudden passion, which could reduce the applicable sentencing range. Ordinarily, murder is a first-degree felony, punishable by imprisonment from 5 years to life. TEX. PENAL CODE ANN. §§ 12.32(a), 19.02(c) (West 2011). When enhanced for one prior felony, the minimum sentence is increased to 15 years. *Id.* § 12.42(c)(1). However, if the defendant shows at the punishment stage that he acted under the immediate influence of sudden passion arising from an adequate cause, the offense is punishable by imprisonment for 2 to 20 years, or 5 years to life if enhanced for one

14

prior felony. *Id.* §§ 12.33(a), 12.42(b), 19.02(d). Dukes' punishment range in this case was enhanced by a prior felony conviction. Thus, if Dukes had proven that he had acted under the influence of sudden passion, his minimum sentence would have been 5 years rather than 15 years. *Id.*

Sudden passion is "passion directly caused by and arising out of provocation by the individual killed" at the time of the murder. *Id.* § 19.02(a)(2). Adequate cause is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). A sudden passion instruction is justified if the record at least minimally supports an inference:

> (1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment;
>
> (2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper;
>
> (3) that he committed the murder before regaining his capacity for cool reflection; and
>
> (4) that a causal connection existed "between the provocation, passion, and homicide."

*Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013) (quoting *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005)). The evidence supporting a

15

sudden passion instruction may be weak, impeached, contradicted, or unbelievable. *Id.* If the evidence raises the issue of sudden passion from any source, during either phase of trial, then the defendant has satisfied his burden of production, and the trial court must submit the issue in the jury charge on the defendant's request. *Id.* However, counsel is not ineffective for failing to request a jury instruction to which the defendant is not entitled. *Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex. Crim. App. 2004).

The testimony at trial shows that Bates-Williams intervened in the argument between Dukes and Jackson, and that a heated argument resulted, in which Bates-Williams followed Dukes and may have challenged him. Sudden passion is an extreme emotional and psychological state. *See Saldivar v. State*, 980 S.W.2d 475, 506 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). To be an adequate cause, a provocation must be of a kind that would make an ordinary person's mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.02(a)(1). Ordinary anger does not justify a sudden passion instruction. *Freeman v. State*, 230 S.W.3d 392, 410 (Tex. App.—Eastland 2007, pet. ref'd); *Hernandez v. State*, 127 S.W.3d 206, 213–14 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). While Bates-Williams's actions might have been cause for anger, they would not drive a person of ordinary temper to a violent passion. *See* TEX. PENAL CODE ANN. § 19.02(a); *Wooten*, 400 S.W.3d at 605. Nor were Bates-Williams's remarks of a kind that

16

would make an ordinary person's mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.02(a)(1). Because Bates-Williams' actions did not constitute sufficient provocation, defense counsel did not render ineffective assistance by not requesting a sudden passion instruction. TEX. PENAL CODE ANN. § 19.02(a); *Hernandez*, 127 S.W.3d at 213–14; *Saldivar*, 980 S.W.2d at 506.

**2. Limiting Instruction**

Dukes alleges that his counsel was ineffective because he failed to request a limiting instruction concerning evidence that he was using drugs before he shot Bates-Williams. When asked why she did not want to go with Dukes, Chaddricka Jackson explained that she was scared because she saw powder in Dukes' nose, and she believed that he had been snorting drugs. At that time, Dukes' counsel explained on the record that he believed that a limiting instruction would draw further attention to Dukes' drug use.

Later, the State presented testimony that cocaine use was associated with aggression, and in the State's closing argument, the prosecutor suggested that Dukes' cocaine use might have contributed to his violent behavior. Dukes contends that his counsel's decision not to request a limiting instruction was objectively unreasonable, and that he was prejudiced as a result.

Evidence of other crimes or bad acts is not admissible to prove that on a particular occasion the defendant acted in accordance with that character. TEX. R.

17

EVID. 404(b). Evidence of crimes or bad acts may, however, be admissible for other purposes. *Id.* These include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *Id.* Evidence of extraneous offenses may also be admitted where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)). If evidence is admitted for a limited purpose, upon the defendant's request, the trial court must give a limiting instruction asking the jury to consider the evidence only for the permitted purpose and only if it finds beyond a reasonable doubt that the defendant committed the bad acts. *McNeil v. State*, 452 S.W.3d 408, 414 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (first citing TEX. R. EVID. 105; and then citing *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994)). If a limiting instruction is not requested at the time the evidence is admitted, it is admitted for all purposes. *Hammock v. State*, 46 S.W.3d 889, 894–95 (Tex. Crim. App. 2001). However, a limiting instruction is not required when evidence of extraneous offenses is admitted as same-transaction contextual evidence. *Devoe*, 354 S.W.3d at 471. Counsel is not ineffective for failing to

18

request a limiting instruction to which the defendant is not entitled. *Goodman v. State*, 8 S.W.3d 362, 366 (Tex. App.—Austin 1999, no pet.).

Because Jackson's testimony was admissible as same-transaction contextual evidence, trial counsel was not ineffective for failing to request a limiting instruction. *See Devoe*, 354 S.W.3d at 471; *Goodman*, 8 S.W.3d at 366. Moreover, we indulge a strong presumption that trial counsel's choices "might be considered sound trial strategy." *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Texas courts have consistently held that the decision whether to request a limiting instruction may be a matter of trial strategy. *E.g.*, *Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007); *McNeil*, 452 S.W.3d at 413–15 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Thus, we conclude that Dukes' trial counsel was not ineffective for failing to request a limiting instruction.

### 3. Erroneous Advice

Dukes next contends that his counsel was ineffective because counsel wrongly advised him about the consequences of his decision to testify during the punishment phase of his trial. Dukes avers that his counsel had the wrong impression that his testimony would waive his opportunity to assert appellate error. Dukes claims that this advice referred to the now-defunct *DeGarmo* doctrine, under which, if a defendant admitted guilt in the punishment stage, he waived all

claims of error in the guilt-innocence stage. *See Jacobson v. State*, 398 S.W.3d 195, 196–97 (Tex. Crim. App. 2013) (overruling "any last vestiges" of the *DeGarmo* doctrine). Prior to the commencement of the punishment phase of trial, the following exchange occurred:

> COUNSEL: And also Your Honor while we're on the record, Mr. Dukes you also have the right to testify or not testify at this phase of the proceedings. It's my obligation again to advise you if you do so you'll be waiving certain potential points of error on appeal. So, do you want to testify on the punishment phase of the trial? You're shaking your head no so that's a no right?
>
> THE DEFENDANT: No, sir.

The defendant has the right to testify at his own trial. *Rock v. Arkansas*, 483 U.S. 44, 51–52, 107 S. Ct. 2704, 2709 (1987); *Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009). When reviewing a claim that counsel deprived a defendant of his right to testify on his own behalf, the two-part *Strickland* test applies. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005). A claim of ineffective assistance must be firmly supported in the record. *Thompson*, 9 S.W.3d at 813. A silent record that provides no explanation for trial counsel's actions will not overcome the presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Further, a claim that trial counsel deprived the defendant of his right to testify must be supported by

evidence in the record that the defendant would have testified, and of what the defendant would have said. *See Carballo v. State*, 303 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Ex parte Farland*, 163 S.W.3d 743, 758 (Tex. Crim. App. 2005)).

Even if trial counsel erroneously informed Dukes that he would waive certain appellate issues by testifying during the punishment phase, Dukes has not shown harm as required by *Strickland's* second prong. Dukes asserts that the above quoted exchange demonstrates that he "chose not to testify because he was relying on the erroneous advice of his trial attorney." However, Dukes did not indicate that he would have testified except for his reliance on this advice, and the record does not reveal what the substance of his testimony would have been, nor whether his testimony would probably have affected the outcome of the punishment hearing.

Dukes' trial counsel put information about the punishment investigation on the record: "I've interviewed two potential punishment witnesses, one Ernest L. Robinson who is the fiancée of Mr. Dukes here, has known him since he was ten years old and also Mr. Dukes' mother Kimberly Dukes. And we've made a strategic decision not to call those people because of the risk of opening the door to certain reputation evidence and opinion evidence regarding Mr. Dukes I believe would be highly prejudicial to him." Dukes stipulated to prior convictions for

felony drug possession, assault on a family member, two criminal trespass convictions, and an evading arrest conviction. He admitted to the investigating officer that he once was a Five Nine Bounty Hunter and a Blood gang member, but the officer also conceded that Dukes told him that Dukes was no longer active with the gang. Dukes had several identifiable gang tattoos, including "bloody days" above his left eyebrow and "bloody ways" above his right eyebrow, a Blood Nation tattoo on one cheek, and other tattoos over his chest and arms.

Defense counsel used the police officer's concession that Dukes told him that Dukes was no longer involved in a gang during closing to argue that Dukes' gang activity was in the past and that there was no evidence that the murder was gang related. Some mitigating evidence came in during the guilt phase – that Dukes is a nephew, son, and father and that he was trying to take care of his family. His lawyer referred to that evidence during punishment.

Because Dukes has not presented us with a record establishing that but for counsel's legal advice, his punishment would have been different, we hold that he has failed to meet *Strickland*'s second prong. *See Smith*, 286 S.W.3d at 338 n.9; *Johnson*, 169 S.W.3d at 239; *Rylander v. State*, 101 S.W.3d 107 at 111; *Thompson*, 9 S.W.3d at 813; *Carballo*, 303 S.W.3d at 751.

## 4. Improper Jury Argument

Lastly, Dukes contends that his counsel was ineffective because he did not object to certain remarks by the State in its closing argument. In response to defense argument questioning the credibility of its witness Chasity Williams, the State argued:

> [W]hat I can tell you about this is that that interview [with police after the killing], you know that interview is exactly, exactly word for word what she told you on the stand. The reason you know that is because the Defense counsel [sic] never once asked her a single question about something different she told Officer Rexroad did he, not once. And when she's up there he can ask her any question he wants but he didn't. Because there was nothing different than the testimony she gave that night to the testimony she gave to you today.

Dukes contends that this statement improperly commented on facts not in evidence and vouched for Williams's credibility.

Proper jury argument falls into four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's arguments; and (4) pleas for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). A prosecutor cannot use closing argument to put matters before the jury that are outside the record and prejudicial to the accused. *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986); *Gonzalez v. State*, 115 S.W.3d 278, 284 (Tex. App.—Corpus Christi 2003, pet.

23

ref'd). Further, a prosecutor may not bolster a witness's credibility by opining that the witness is truthful. *Sanders v. State*, 191 S.W.3d 272, 275 (Tex. App.—Waco 2006, pet. ref'd) (citing *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981)). However, the prosecutor may comment on the defendant's failure to produce evidence as long as the prosecutor does not comment on the defendant's failure to testify. *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000).

As long as it does not comment on the defendant's failure to testify, the State may comment on the defendant's failure to present evidence on a particular matter. *Jackson*, 17 S.W.3d at 674. Thus, the State was entitled to argue from Dukes' failure to impeach Williams with her police interview that her trial testimony was consistent with her interview testimony. *Id.* Because the State's argument was not improper, Dukes' counsel was not ineffective for failing to object to it. *Ibarra v. State*, 456 S.W.3d 349, 358 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

## Conclusion

We hold that sufficient evidence supports the jury's guilty verdict. We further hold that the trial court did not err in denying Dukes' challenge for cause and in excluding his evidence of an alternative perpetrator. Lastly, we hold that Dukes is not entitled to a new trial based on ineffective assistance of trial counsel based on the record before us. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Publish. TEX. R. APP. P. 47.2(b).