**Opinion issued April 22, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00534-CR

_____

**JULIO K. KISIJARA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 338th District Court
Harris County, Texas
Trial Court Case No. 1780688

## MEMORANDUM OPINION

A jury convicted Julio K. Kisijara of continuous sexual abuse of a child and

sentenced him to 50 years' imprisonment.[1]  In eight issues, Kisijara argues that the

---

[1]     *See* TEX. PENAL CODE § 21.02.

trial court abused its discretion in admitting evidence of extraneous offenses, that he was egregiously harmed by the lack of mid-trial limiting instructions related to the extraneous offenses and by the trial court's failure to properly instruct the jury with respect to the extraneous offenses, and that his trial counsel was ineffective.

We affirm.

## Background

K.E. and H.E. are sisters who moved with their parents and older sister from New Jersey to Houston in approximately 2004. Kisijara—K.E. and H.E.'s uncle— and his family also moved from New Jersey to Houston and lived next door to K.E. and H.E.

K.E., who was twenty-four at the time of trial in 2023, testified that Kisijara began sexually abusing her when she was around seven years old, after they had moved to Houston. The first incident happened on the couch in the living room of Kisijara's house. K.E. testified that she sat on Kisijara's lap, he put a blanket over her, put his hands in her underwear and "rub[bed] everywhere" on her vagina. K.E. testified that Kisijara abused her in this manner "a couple" of times "over a period of time."

Another incident occurred when K.E. was sleeping at Kisijara's house in her cousin's room. K.E. heard the door open and Kisijara come into the room, but she

pretended to be asleep. Kisijara pulled the blanket down that was covering K.E., put his hand in her underwear, and began rubbing her vagina.

The last incident occurred when K.E. was around twelve years old. K.E. came into Kisijara's house to get her cousins, who were upstairs, but Kisijara called her into his office. Kisijara was sitting in his chair at his desk and when she walked up to him, he grabbed her. Kisijara turned K.E. around so that her back to was him, used his left arm to wrap around her and pin her arms to her body, and put his right hand in her pants and rubbed her vagina. K.E. screamed for help and elbowed Kisijara. Kisijara laughed as she screamed for help, and eventually let her go.

When K.E. was twelve, she disclosed the sexual abuse to a therapist. The therapist notified Child Protective Services (CPS) and K.E.'s father. K.E. spoke with CPS and was told that she was "not allowed in [Kisijara's] house anymore, ever, at all." Although K.E. reported the abuse, "nothing happened" and "it was pretty much swept under the rug."

H.E., who was twenty at the time of trial, also testified that Kisijara sexually abused her from the time she was seven or eight until she was ten or eleven years old. H.E. testified that the first incident occurred when she was sleeping at her cousin's house (Kisijara's daughter). That night, H.E. was in the restroom when Kisijara came in, removed her clothes, and touched H.E.'s breasts, vagina, and clitoris with his hands. H.E. testified that Kisijara also took pictures of her after he

3

removed her clothes. As he was taking pictures of her, Kisijara told H.E. "[i]t was [her] fault."

H.E. testified that another incident occurred when she was eight or nine and was spending the night with her cousin at Kisijara's house. H.E. was sleeping with her cousin on the bottom bunk when Kisijara came into the room and "started to touch [her]." H.E. testified that she "didn't like it" and "wanted it to stop," so she urinated on herself.

H.E. described another incident when she urinated on herself to stop Kisijara's sexual abuse. H.E. was spending the night in the guest room at Kisijara's house, and Kisijara came into the room while she was sleeping. H.E. testified that Kisijara touched her and she "tried to pee [her] pants so he would stop."

Finally, H.E. testified that when she was around eleven years old, she was sleeping at Kisijara's house with her cousin after a cheerleading tournament. She fell asleep on the couch and awakened to Kisijara rubbing her breasts, vagina, and clitoris, underneath her clothes, with his hands. H.E. testified that she "didn't understand what was happening" so she pretended to be asleep.

In total, H.E. testified that Kisijara sexually abused her ten to twelve times. She testified that he took pictures of her while she was nude six or seven times. Each time while he photographed her, H.E. testified that Kisijara told her "[i]t was [her] fault."

4

Several years later, when K.E. was a senior in high school and H.E. was fourteen or fifteen, K.E. discovered that Kisijara had also sexually abused H.E. Because H.E. was scared, K.E. did not immediately report the abuse to law enforcement. But in July 2018, when she was nineteen, K.E. reported Kisijara's sexual abuse of herself and H.E. to the Harris County Sheriff's Office. H.E. did not report the sexual abuse to law enforcement until 2020 when she was approximately 16 years old.

Kisijara was subsequently charged with continuous sexual abuse of a child.[2] The indictment alleged that Kisijara committed two acts of indecency with a child,[3] one against K.E. and one against H.E:

---

[2] A person commits the offense of continuous sexual abuse of a young child if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
>
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is . . . a child younger than 14 years of age[.]

TEX. PENAL CODE § 21.02(b)(1), (2)(A).

An "act of sexual abuse" as used in Section 21.02 includes any act that is a violation of Section 21.11(a)(1), indecency with a child, "if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child." *Id.* § 21.02(c)(2).

[3] A person commits the offense of indecency with a child if, with a child younger than 17 years of age, the person "engages in sexual contact with the child or causes the child to engage in sexual contact." *Id.* § 21.11(a)(1). Sexual contact, if committed with the intent to arouse or gratify the sexual desire of any person,

[Kisijara] . . . on or about July 2, 2008 and continuing through on or about June 2, 2011, did then and there unlawfully, during a period of time of thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of Indecency with a Child, committed against H.E. on or about July 2, 2008, and an act constituting Indecency with a Child, committed against K.E. on or about June 2, 2011, and [Kisijara] was at least seventeen years of age at the time of the commission of each of those acts.

On August 11, 2022, the State filed a notice of intention to use extraneous offenses and prior convictions. Included in this notice were 13 extraneous offenses, but the notice did not include a specific allegation that Kisijara took nude photographs of H.E.[4]

On May 24, 2023, the State released "meeting notes" to defense counsel that described that Kisijara took nude photographs of H.E. Kisijara filed a motion in limine requesting that the trial court prohibit the State from introducing evidence of "[a]ny crimes, wrongs, or acts that [Kisijara] has allegedly committed other than in this cause number . . . until a hearing is held outside the jury's presence[.]"

Following a pretrial hearing pursuant to article 38.37 of the Texas Code of Criminal Procedure, the trial court ruled that H.E.'s testimony would be admitted

---

means: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *See id.* § 21.11(c).

[4] The notice did include allegations that Kisijara exposed H.E.'s anus and genitals by removing her clothing.

6

and that she would be permitted to testify to the nude photographs that were allegedly taken.

Trial began on June 2, 2023. After the jury convicted Kisijara of the charged offense, Kisijara moved for a new trial, arguing that his trial counsel was ineffective and that he was egregiously harmed by the absence of limiting instructions related to the extraneous offense that he took nude photographs of H.E. The trial court issued findings of fact and conclusions of law and denied the motion for new trial. This appeal followed.

### Extraneous Offense Evidence

In his first and second issues, Kisijara argues that the extraneous offense evidence related to nude photographs of H.E. was inadmissible under Texas Rules of Evidence 404(b) and 403, and thus the trial court abused its discretion in admitting such evidence. Kisijara acknowledges that Texas Code of Criminal Procedure article 38.37, when applicable, supersedes application of rule 404(b) making evidence of otherwise inadmissible extraneous acts admissible. But Kisijara contends that because the State failed to give timely notice of its intent to use this extraneous offense evidence, the evidence was not admissible under article 38.37. The State responds that Kisijara did not preserve his argument with respect to notice under article 38.37, but that in any event, this testimony is admissible under article 38.37 and rule 404(b) as same-transaction contextual evidence.

We agree with the State.

## A. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

"Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (citing TEX. R. EVID. 404(b)). To be admissible, extraneous offense evidence must pass the two-prong test imposed by Texas Rules of Evidence 404(b) and 403: (1) the extraneous offense evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and (2) the probative value of the evidence [must not be] substantially outweighed by unfair prejudice. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" TEX. R. EVID. 404(b)(1). Such extraneous offense evidence may be admissible, however, "when it

has relevance apart from character conformity." *Devoe*, 354 S.W.3d at 469. This may include evidence offered to "show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*; TEX. R. EVID. 404(b)(2).

Article 38.37, entitled "Evidence of extraneous offenses or acts," is an evidentiary rule applicable to certain types of sexual abuse cases including sexual assault of a child, indecency with a child, and continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. art. 38.37; *Lara v. State*, 513 S.W.3d 135, 141 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "It supersedes application of Rule 404(b), making admissible extraneous offense evidence that Rule 404(b) does not." *Lara*, 513 S.W.3d at 141; *see* TEX. CODE CRIM. PROC. art. 38.37 §§ 1(b), 2(b).

Article 38.37 allows the jury to consider, notwithstanding rule 404, "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense" for its bearing on "relevant matters," including the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child. *See* TEX. CODE CRIM. PROC. art. 38.37 § 1(b).

But under article 38.37, the State must give a defendant, at least 30 days before trial, notice of its intention to introduce evidence of other offenses the defendant committed as described in Section 1, including sexual assault of a child, indecency

9

with a child, and continuous sexual abuse of a child. *Id.* art. 38.37 §§ 1, 3. The purpose of the notice requirement in article 38.37 is to prevent surprise and enable the defendant adequate time to prepare for the State's introduction of such extraneous offense evidence at trial. *See Jeansonne v. State*, 624 S.W.3d 78, 98 (Tex. App.—Houston [1st Dist.] 2021, no pet.). To preserve error regarding the State's failure to provide reasonable notice of its intent to use extraneous offense evidence, however, the defendant must request a continuance to mitigate the effects of surprise. *See Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

**B. Lack of Notice**

On appeal, Kisijara argues that he did not receive notice of the State's intent to present H.E.'s testimony that he took nude photographs of her until the day before trial, and thus, the State failed to comply with the mandatory requirements of article 38.37. But the record reflects that Kisijara did not object to the admission of this evidence at trial based on the State's failure to comply with article 38.37's 30-day notice requirement.

Instead, at the article 38.37 hearing conducted by the trial court, he conceded that he was not "necessarily arguing against the claim of [Kisijara] taking photos in and of itself." And rather than contending that he did not receive the 30-day notice that the State intended to introduce this evidence at trial, Kisijara argued that H.E.'s

testimony should not be admitted because she did not describe any offense included in the indictment.  Specifically, Kisijara argued:

> [H.E.] didn't detail or indicate any offense that's alleged in the indictment, or any extraneous offense. And they keep discussing the photos. I plan on—we plan on crossing her about her talking about photos being taken because that was the first time she said it was this past Thursday. And there aren't any pornography photos that were gathered by the State, law enforcement, CPS, or the Child Advocacy Center. So there's no child porn in this case. The first time she brought up photos was Thursday with the State. So we plan on crossing her on that specific point.

> What we're arguing here is that after they added [H.E.] to the indictment, which was 2022, the end of 2022, they are saying that her extraneous conduct, and whatever is alleged in the indictment, should come in along with [K.E.]. This hearing is to determine the credibility and the reliable testimony of that witness because of some inconsistent statements that took place in 2012, 2018, 2019, all the way up to 2020.

> [H.E.] hasn't articulated anything that should go in front of the trier of fact for them to make a reasonable or just conclusion beyond a reasonable doubt that he's guilty as charged in the indictment.

As evidenced by the argument above, Kisijara did not object to the admission of H.E.'s testimony on the basis that the State failed to provide the 30-day notice as required by article 38.37—the argument he now makes on appeal.  Thus, we agree with the State that Kisijara's argument on appeal is not preserved because it does not comport with the objection he made below. *See Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) ("If a trial objection does not comport with arguments on appeal, error has not been preserved."); TEX. R. APP. P. 33.1(a).

Nor did Kisijara request a continuance upon learning of H.E.'s testimony with respect to the nude photos. Having failed to do so, Kisijara has waived any complaint that he was surprised by the State's untimely notice. *See Martines*, 371 S.W.3d at 249; *see also Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.).

Accordingly, we conclude that Kisijara has failed to preserve for appellate review his contention that this testimony was inadmissible under article 38.37 because the State did not provide proper notice. *See Martines*, 371 S.W.3d at 249.

## C.    Same-Transaction Contextual Evidence

But even if Kisijara preserved his objection to the lack of notice under article 38.37, we conclude that the evidence was admissible as same-transaction contextual evidence, for which notice is not required under either article 38.37 or rule 404(b).

"Evidence of another crime, wrong, or act . . . may be admissible as same-transaction contextual evidence where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others.'" *Devoe*, 354 S.W.3d at 469 (quoting *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)). "[S]ame-transaction contextual evidence is admissible only when the [charged] offense would make little or no sense without also bringing in [the same-transaction contextual] evidence." *Id.*

The purpose of admitting same-transaction contextual evidence is to put the charged offense in context. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) ("Such extraneous offenses are admissible [as same-transaction contextual evidence] to show the context in which the criminal act occurred."). "[E]vents do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of [the charged offense] so that it may realistically evaluate the evidence." *Wesbrook*, 29 S.W.3d at 115.

Here, H.E. testified that Kisijara removed her clothes, after which he touched her vagina and breasts and took photographs of her while she was naked. All of this occurred during the first incident in the restroom. Accordingly, H.E.'s testimony about Kisijara taking nude photographs of her was part of "an indivisible criminal transaction" and was necessary to explain the circumstances surrounding the first incident of sexual abuse. *See Devoe*, 354 S.W.3d at 469; *see also, e.g.*, *Houston v. State*, 832 S.W.2d 180, 182 (Tex. App.—Waco 1992, pet. dism'd) ("[T]he State was entitled to prove all of the facts and circumstances surrounding the sexual assault, everything that [the defendant] said and did, including how he used the nude photographs to lure [the complainant] to where she was sexually assaulted and how he tried to use them to get her to submit to the sexual assault.").

Moreover, H.E. testified that while Kisijara took nude photographs of her, he told her "it was [her] fault." The State's expert witness, Dr. Whitney Crowson, testified that this was an indicator of Kisijara's "grooming" with respect to H.E. Dr. Crowson testified that "[g]rooming is the process by which a perpetrator will gain access to a child, maintain the access, and reduce the chances of disclosure, and if there is a disclosure, reduces the chance of being believed." Dr. Crowson testified that abusers groom children so that "no one finds out, they don't get disclosure." Dr. Crowson explained that, in H.E.'s case, Kisijara made H.E. feel like she was to blame or was responsible in some way for the abuse, which could be shaming and intimidating for a child. She also testified that taking naked photos could also be very intimidating, or even threatening, "even if no words were expressed to be threatening" because "[n]o one wants naked photos of themselves out for anyone to see."

Courts have held that evidence of an extraneous offense or bad act is admissible to explain the reason for a sexual assault victim's delayed outcry of abuse. *See Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (holding that testimony that appellant threatened to kill the sexual-assault victim's family was admissible to show reason for delayed outcry); *see also, e.g.*, *Stulce v. State*, No. 05-14-01226-CR, 2016 WL 4218594, at *4 (Tex. App.—Dallas Aug. 9, 2016, no pet.) (mem. op., not designated for publication) (holding that evidence related to

14

defendant's previous sexual assaults of victim were admissible as same-transaction contextual evidence because "[u]nderstanding the dynamics of the parties' relationship was critical to the jury to evaluate what happened between them on [the date of the charged offense]" and because "[t]he contextual evidence helps explain why [victim] delayed reporting the offense to police").[5] Based on our review of the record, the testimony related to Kisijara taking nude photographs of H.E. would also constitute same-transaction contextual evidence because it occurred during the commission of the sexual abuse and was necessary to explain to the jury how Kisijara groomed H.E. and why H.E. may have delayed her outcry. *See, e.g.*, *Stulce*, 2016 WL 4218594, at *4; *Patterson v. State*, No. 08-13-00152-CR, 2015 WL 1850899, at *3 (Tex. App.—El Paso Apr. 22, 2015, no pet.) (not designated for publication).

We conclude that the testimony related to Kisijara taking nude photographs of H.E. put the charged offense into context and was necessary for the jury's understanding of the offense. We therefore hold that the trial court did not abuse its

---

[5]     *See, e.g.*, *Patterson v. State*, No. 08-13-00152-CR, 2015 WL 1850899, at *3 (Tex. App.—El Paso Apr. 22, 2015, no pet.) (not designated for publication) (holding that evidence of defendant's threat to kill victim and her family if she called police was admissible as same-transaction contextual evidence because it "was intermixed with and indivisibly connected to the charged offense given that the threat was made during the course of the aggravated sexual assault and it explained [victim's] resistance to her sister calling the police").

discretion in admitting this evidence as same-transaction contextual evidence.[6] *See Devoe*, 354 S.W.3d at 469–70.

And given that this evidence was properly admitted as same-transaction contextual evidence, even if Kisijara preserved his notice objection, the State was not required to give notice of its intent to introduce this evidence under either article 38.37 or rule 404(b). *See* TEX. R. EVID. 404(b) (providing that State must provide reasonable notice before trial that it intends to introduce evidence of another crime, wrong, or other act *other than that arising in the same transaction*); *McDonald v. State*, 148 S.W.3d 598, 602 n.3 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 179 S.W.3d 571 (Tex. Crim. App. 2005) ("[A]lthough article 38.37 does not contain an express exception to the notice requirement for evidence arising in the same transaction, as does Rule 404(b), section 4 of article 38.37 provides that it does not limit the admissibility of extraneous offense evidence under any other applicable law. Therefore, to the extent such evidence would be admissible without notice under Rule 404(b) as same transaction evidence, it logically follows that article 38.37 would not limit that admissibility." (internal citations omitted)).

We overrule Kisijara's first issue.

---

[6] Because we conclude that the evidence was properly admitted as same-transaction contextual evidence, we do not consider Kisijara's argument that the evidence was not admissible under any exception to rule 404(b). *See* TEX. R. APP. P. 47.1.

**D.    Rule 403**

We turn next to Kisijara's argument that the evidence that he took nude photographs of H.E. was inadmissible under rule 403 because the prejudicial effect of this evidence outweighed its probative value. The State contends that Kisijara did not preserve his rule 403 objection to this evidence.  We agree.

Texas Rule of Evidence 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, or needlessly presenting cumulative evidence. *See* TEX. R. EVID. 403.  In addition to satisfying the requirements of same-transaction contextual evidence, to be admissible, extraneous evidence must also satisfy the balancing test of Rule 403. *See Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (citing TEX. R. EVID. 403).  "Generally, although a trial court must still perform a balancing test to see if the same transaction contextual evidence's probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal transaction." *Id.*

However, to preserve a complaint for appellate review, a party must lodge a timely and specific objection, obtain an adverse ruling, and then either "object each time the inadmissible evidence is offered or obtain a running objection." *See Valle*

*v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see also* TEX. R. APP. P. 33.1(a). Rule 403 must be specifically invoked in the trial court to preserve error under that rule. *Montgomery v. State*, 810 S.W.2d 372, 388–89 (Tex. Crim. App. 1990).

As we explained above, Kisijara's objections to H.E.'s testimony at the article 38.37 hearing were not to the admissibility of the specific evidence he challenges now on appeal, i.e., the testimony that Kisijara took nude photographs of H.E. Rather, Kisijara objected to the introduction of *any* of H.E.'s testimony because "[i]t doesn't seem that [H.E.] will be able to, or can provide any information about being sexually assaulted." In essence, Kisijara objected to the trial court allowing H.E. to testify at all because of numerous inconsistent statements she purportedly gave for years that she was not being sexually abused, before finally reporting the abuse in 2020.

Kisijara did argue that "it would be [more] highly prejudicial than it is probative" to allow H.E. to testify. But to the extent this could be interpreted as a rule 403 objection, it was based on H.E.'s purported inability to "articulate [a] sexual assault."

Thus, it is clear from a review of the record that Kisijara did not make a specific objection to the admission of H.E.'s testimony related to the nude

photographs on the basis of rule 403. Accordingly, we hold that he has not preserved this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a).

We overrule Kisijara's second issue.

**Limiting Instructions**

In his third and fourth issues, Kisijara argues that he suffered egregious harm because the trial court failed to give mid-trial limiting instructions regarding the State's burden of proof for the extraneous act—taking nude photographs of H.E.— and the limited purpose for which the jury could consider this extraneous act. Specifically, Kisijara argues if the trial court admits evidence for a specific purpose, then the court "must restrict the evidence to its proper scope and instruct the jury accordingly." Kisijara contends that because the trial court admitted this evidence for the limited purposes in article 38.37 and rule 404(b), he was entitled to a mid-trial instruction limiting the jury's consideration of that evidence solely to those limited purposes. And he argues that once the trial court ruled that this evidence was admissible, he was entitled to have jurors instructed that they could not consider this evidence unless they first found beyond a reasonable doubt that he had committed this extraneous act. In his fifth issue, Kisijara further argues that the trial court failed to properly instruct the jury in the charge with respect to this extraneous act.

19

It is true that if evidence is admitted for a limited purpose, upon the defendant's request,[7] the trial court must give a limiting instruction asking the jury to consider the evidence only for the permitted purpose and only if it finds beyond a reasonable doubt that the defendant committed the bad acts. *See Dukes v. State*, 486 S.W.3d 170, 181 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also* TEX. R. EVID. 105. If a limiting instruction is not requested at the time the evidence is admitted, it is admitted for all purposes. *Hammock v. State*, 46 S.W.3d 889, 894–95 (Tex. Crim. App. 2001).

But the Court of Criminal Appeals has held that a limiting instruction is *not* required when evidence is admitted as same-transaction contextual evidence. *Devoe*, 354 S.W.3d at 471; *Wesbrook*, 29 S.W.3d at 114–15; *see also Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007) (holding that when evidence is admitted as same-transaction contextual evidence, "defendant is not entitled to any limiting instruction concerning the use of that evidence").

Here, the record shows, and Kisijara admits, that he did not request mid-trial limiting instructions with respect to the nude photographs. But because we have held that this evidence was properly admitted as same-transaction contextual evidence, we likewise hold that Kisijara was not entitled to any limiting instructions,

---

[7] *See also Delgado v. State*, 235 S.W.3d 244, 254 (Tex. Crim. App. 2007) ("[A] a trial court is not required to instruct the jury sua sponte on the burden of proof to be used when considering evidence of an extraneous offense during the guilt phase.").

20

during trial or in the charge, concerning the use of that evidence. *See Devoe*, 354 S.W.3d at 471; *Delgado*, 235 S.W.3d at 253–54.[8]

Moreover, even though not required, at Kisijara's request and over the State's objection, the trial court included an article 38.37 and rule 404(b) limiting instruction in the court's charge:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.
>
> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing other crimes, wrongs, or acts against the child who is the victim of the alleged offense in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts against the child, if any. If you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts against the child, you may then, only then, consider the same in determining its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child.

---

[8] *See also Mirza v. State*, No. 01-16-00506-CR, 2017 WL 3526766, at *7 (Tex. App.—Houston [1st Dist.] Aug. 17, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that "[n]o limiting instruction is required when evidence is admitted as same-transaction contextual evidence," and therefore trial court did not err in refusing to grant limiting instruction when evidence was admitted or to include any kind of limiting instruction in jury charge).

21

To the extent that Kisijara complains on appeal that the trial court's inclusion of these limiting instructions in the charge was in error, we disagree. The Court of Criminal Appeals has held that an extraneous-offense limiting instruction is beneficial to a defendant, and a trial judge does not commit reversible error by including such instructions in the jury charge, even when unnecessary. *See Fair v. State*, 465 S.W.2d 753, 754–55 (Tex. Crim. App. 1971); *see also Ferreira v. State*, 514 S.W.3d 297, 301–02 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Therefore, we conclude that the trial court's charge contained no error.

We overrule Kisijara's third, fourth, and fifth issues.

### Ineffective Assistance of Counsel

In his sixth, seventh, and eighth issues, Kisijara argues that his trial counsel was ineffective for (1) failing to request a mid-trial limiting instruction regarding the State's burden of proof as to the nude photographs extraneous offense, (2) failing to request a mid-trial limiting instruction properly limiting the jury's consideration of this extraneous offense, and (3) failing to object to an instruction in the charge authorizing jurors to consider evidence of this extraneous offense for the limited purposes of "motive, opportunity, intent, preparation, plan or absence of mistake," when this evidence was not admissible for any or all of these reasons.

*Strickland v. Washington* sets the standard of review for claims of ineffective assistance of counsel. 466 U.S. 668, 687–96 (1984); *accord Bone v. State*, 77 S.W.3d

828, 833 (Tex. Crim. App. 2002). To prevail, Kisijara must first show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687; *Bone*, 77 S.W.3d at 833. Specifically, Kisijara "must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms." *Bone*, 77 S.W.3d at 833. Second, Kisijara "must show that this deficient performance prejudiced his defense," meaning that he "must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. In assessing counsel's performance, we consider the entire representation, indulging a strong presumption that the attorney's performance falls within the wide range of reasonable professional assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Furthermore, a claim of ineffective assistance must be firmly supported in the record. *Id.*

23

When, as here, an appellant raises an ineffective assistance claim in a motion for new trial, we analyze the issue on appeal as a challenge to the trial court's denial of the new-trial motion and review that decision for an abuse of discretion. *Robinson v. State*, 514 S.W.3d 816, 823–24 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). We will reverse only if the decision to deny the motion for new trial was arbitrary or unreasonable, viewing the evidence in the light most favorable to the trial court's ruling. *Id.* A decision is arbitrary or unreasonable if no reasonable view of the record could support the trial court's ruling. *Id.*; *see Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013).

As we have already held, H.E.'s testimony that Kisijara took nude photographs of her was properly admitted as same-transaction contextual evidence. And this Court has held that when evidence is properly admitted as same-transaction contextual evidence, trial counsel is not ineffective for failing to request a limiting instruction. *See Dukes*, 486 S.W.3d at 181.[9] Therefore, because Kisijara was not entitled to any limiting instructions with respect to this evidence, his trial counsel was not ineffective for failing to request any mid-trial limiting instructions. *See id.*

---

[9] *See also Jordan v. State*, No. 01-13-00775-CR, 2015 WL 1062671, at *8 (Tex. App.—Houston [1st Dist.] Mar. 10, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that counsel was not ineffective for failing to request improper limiting instruction regarding same-transaction contextual evidence).

We likewise reject Kisijara's argument that trial counsel was ineffective for failing to seek a "proper limiting instruction in the court's charge." Despite the fact that Kisijara was not entitled to any limiting instruction, counsel requested and the trial court gave, an instruction authorizing jurors to consider evidence of this extraneous offense for the limited purposes of "motive, opportunity, intent, preparation, plan or absence of mistake." As detailed above, this instruction was actually beneficial to Kisijara, in that it directed the jury to consider the extraneous offense evidence for only limited purposes, rather than all purposes. *See Fair*, 465 S.W.2d at 754–55; *Ferreira*, 514 S.W.3d at 301–02. Accordingly, because such an instruction "was not harmful but beneficial to [Kisijara]," *see Fair*, 465 S.W.2d at 755, he cannot demonstrate that his counsel's alleged deficient performance in requesting such instruction prejudiced his defense. *See Bone*, 77 S.W.3d at 833. Therefore, Kisijara cannot satisfy *Strickland*'s second prong.

Accordingly, we hold that the trial court did not abuse its discretion in denying Kisijara's motion for new trial based on ineffective assistance of counsel.

We overrule Kisijara's sixth, seventh, and eighth issues.

## Conclusion

We affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).